## Case No. 8,515.

### LORING et al. v. MARSH et al.

[2 Cliff. 469; [1] 27 Law Rep. 377.]

Circuit Court, D. Massachusetts.    Oct. Term. 1865.[2]

STATE STATUTE— CONSTRUCTION BY STATE COURT — WILLS—DEVISE TO TRUSTEES — CHILDREN OR ISSUE—NOT PROVIDED FOR—INTENTIONAL OMISSION — POWER COUPLED WITH INTEREST — SURVIVORSHIP.

1. In cases depending on the statute of a state, and more especially in those relating to titles to lands, the federal courts adopt the construction of the state courts, when such construction is settled or can be ascertained; but if the question has not been decided, then the duty of construction devolves upon the tribunal where the case is pending.

2. A testatrix, after certain minor bequests, devised all the rest, residue, and remainder of her property to two trustees, or the survivor of them, their heirs and assigns forever, to hold, manage, and invest the same according to their best discretion, and to pay over the net income to her three children in equal shares. Upon the decease of any one of the children, the share which such one would have taken, if alive, was to be divided between the surviving two; upon the decease of two of them, the survivor to have one half of the whole income during such survivor's life. Upon the decease of all the children, the trustees, or their successors, were to appoint three gentlemen to determine how, by payments to permanently established incorporated charitable institutions, the whole property might be disposed of for the benefit of the poor. After the decease of the three donees under the will,—two without issue,—the children of the other, which children were born before the will was made, as the sole heirs at law of the testatrix, brought a bill against the survivor of the trustees (when the provisions of the will relating to charitable institutions were about to be carried into effect by said trustee), praying for an account, and a decree that said trustee should transfer the property to the complainants, and alleging the trusts to be illegal and void; that they could not be executed; that they had ceased and determined; and that the intention of the testatrix to bestow the property upon charitable institutions was never perfected. Held, that the case showed no unintentional and accidental omission of the complainants in the will, which is requisite under the Massachusetts statute of wills, as construed by the courts of that state, to constitute the foundation of the relief prayed for, and that complainants were not entitled to a decree.

[Cited in Estate of Hinckley, 58 Cal. 495; White v. Ditson, 140 Mass. 351, 4 N. E. 606.]

[See note at end of case.]

3. The power conferred upon the trustees to appoint a committee who should designate the disposition to be made of the property, after the death of all the testatrix's children, was one coupled with an interest which could be exercised by the surviving trustee, and not a mere naked power to two, which could not be exercised by one of them.

4. It appeared that the intention of the testatrix to give the property for the benefit of the poor, had been legally carried into effect.

[See note at end of case.]

5. Review of the decisions of the supreme court of Massachusetts upon the 25th section of the state statute of wills. Children are omitted

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 6 Wall. (73 U. S.) 337.]

in the will, in the sense of this statute, when no legacy is given them, and they are in no manner mentioned; grandchildren, where it appears that their father died before the execution of the will, stand in the same position; and posthumous children fall within the same category, because they are within the express words of the colonial statute of May, 1718, as well as under the decision of the state courts, children born after the date of the will and before the death of the testator.

6. The courts of the United States cannot exercise any equity powers except such as are conferred by an act of congress, and those judicial powers which the high court of chancery in England, under its judicial capacity as a court of equity, possessed and exercised at the time of the formation of the constitution of the United States.

7. Powers not judicial, exercised by the chancellor as the representative of the king's prerogative, are not possessed by the circuit courts.

8. The prerogative power belonging to the sovereign has not been delegated to the federal government, but remains in the several states, to be exercised according to the laws and usages there prevailing.

This was a bill in equity brought to set aside certain provisions in the will of Abigail Loring, formerly of Boston, deceased, and to enforce the rights of the complainants as heirs at law of her estate. [Heard upon motion to continue in Case No. 8,514.] The complainants were Abby R. Loring, Marion W. Loring, Elijah J. Loring, children of Josiah Q. Loring, deceased, who was the son of the testatrix. The will was dated October 19, 1858; and the pleadings showed that at that time the testatrix had three children, namely, Abby M. Loring, Cornelia W. Thompson and Josiah Q. Loring. After certain legacies not material to be noticed, the testatrix devised "all the rest, residue, and remainder of her estate and property, real and personal, unto Levi H. Marsh and Samuel E. Guild, to have and to hold the same to them, and the survivor of them, and their and his heirs and assigns forever to their own use, but in trust to, under and for the following uses, purposes, trusts, and limitations, namely, to hold, manage, invest, and reinvest the same according to their best discretion, and to pay over one third of the net income therefrom" to each of her before-mentioned three children, during their respective lives. Provision was also made in the will that "upon the decease of my said children, severally, the shares of said income, which they would continue to take if living, shall be retained and invested by the trustees, until the decease of my last surviving child, and shall then, with the principal or trust fund, be disposed of for the benefit of the poor in the manner" therein provided. All of the complainants were born before the date of the will, and it is to be observed that provision was made in the will for their father, then living.

The record showed that Cornelia W. Thompson, one of the daughters of the testatrix, died on the 10th of June, 1859, without issue, and that on the 14th of July following the testatrix made a codicil to her

will, giving the whole of the said income, under the conditions and provisions contained in the will, to her two surviving children, in equal shares, during their joint lives, and one half to the survivor of them during his or her life. Josiah Q. Loring died on the 6th of April, 1862, and Samuel E. Guild, one of the trustees, died on the 16th of July in the same year. The testatrix died on the 8th of November, 1862, leaving her will as originally executed, except as modified by the codicil above mentioned. Her remaining daughter, Abby M., died on the 22d of June, 1863, unmarried; and Peter Renton, one of the respondents, was appointed administrator of her estate. The claim of the complainants was, that they were entitled, as heirs at law of her estate, to one half of the property, real and personal, mentioned in the will of the testatrix. The claim was based upon the following grounds: First, that, being the issue of a deceased child of the testatrix, they should take the same share of the estate that they would be entitled to if the testatrix had died intestate, because the testatrix, on the facts exhibited in the record, omitted to provide for them in her will within the meaning of the twenty-fifth section of the Massachusetts statute of wills. Second, that the surviving trustee could not lawfully execute the power directed by the will as the sole means of designating the objects of the testatrix's bounty, because it was not a power to select or appoint the donees of the property, but a mere naked authority to nominate, appoint, and instruct persons who were to act for her in that behalf, in making such selections. Third, that the conclusion of law upon the whole case was, that the intention of the testatrix to give the property to charitable institutions was never perfected, and consequently that they were entitled to their distributive shares in the same as heirs at law.

The respondents contended that the case did not come within the provision of the state statute of wills; that the surviving trustee might execute the power to select and appoint the committee provided for in the will; and that the particular bequest in question was valid by the laws of the state of Massachusetts.

Caleb Cushing, B. R. Curtis, and Hutchins & Wheeler, for complainants.

Mrs. Loring's only son died April 6, 1862, leaving the complainants his sole heirs at law; and Mrs. Loring herself died November 8, 1862, without making any codicil to her will, after the decease of her son, and consequently, without naming the complainants, her grandchildren, in the will, or in any codicil; and as the provision made by the will and codicil for their father was limited to his life, and lapsed by his death in the lifetime of his mother, Mrs. Loring omitted to provide for the issue of her deceased son; and the first question is, whether they are not entitled to the same share of her estate as they would have been, had Mrs. Loring died intestate, by force of chapter 92, § 25, Gen. St. Mass. The time to which the question of omission applies is the time of Mrs. Loring's decease. Not having then made any provision by her will or any codicil for the issue of her deceased son, the case of the statute arises. She had made a will and left issue of a deceased child, without having made any provision for them. Bancroft v. Ives, 3 Gray, 367. This is the case of a son, born after the making of the will. It cannot be distinguished from the case of grandchildren, who became the issue of a deceased son, and so within the statute, by the death of their father after the making of the will. It does not appear that such omission was intentional, and was not occasioned by accident or mistake. The evidence of intention to disinherit an heir should be such as to leave no reasonable doubt of the existence of a formed and settled intention. The common law always favors the heir, and one of its rules is, that an heir cannot be disinherited, even by a will, unless there are express words or a necessary implication to that effect. 5 Cruise, Dig. 136. A fortiori where the disherison is to be effected by parol evidence of mere declarations of the testator. It is the office of such evidence to supply the omission of a clause in the will declaring the intention of the testator to disinherit the heir. Wilson v. Fosket, 6 Metc. [Mass.] 400. It is like the proof of the contents of a lost will by parol evidence and the courts have held that this requires "the clearest and most stringent evidence." Davis v. Sigourney, 8 Metc. [Mass.] 487. If what was actually written, in a duly executed will, cannot be proved to disinherit the heir but by "the clearest and most stringent evidence," a fortiori, the heir cannot be disinherited by an intention never written at all, unless such intention shall be made out by "the clearest and most stringent evidence."

The true inquiry is this: Does it appear, by the clearest and most stringent evidence, that the testatrix had a formed and settled intention to disinherit the children of her deceased son, and that by reason of such intention they were not named in her will or its codicil? The testatrix executed a will and a codicil before the decease of her son. These were ambulatory, and whether she intentionally omitted the complainants from them is not material, as no case under the statute then existed. And an intention to disinherit either children born after the making of a will, or the issue of a child dying after the making of a will, cannot be proved by parol. It can be manifested only by making another will or codicil from which the person is intentionally omitted.

The other branch of this case depends on other facts and principles. By her will, Mrs.

Loring devised the residue of her estate to Levi H. Marsh, one of the defendants, and Samuel E. Guild (who died in the lifetime of the testatrix), in trust to pay one third of the income of her property to each of her children during his or her life; and, upon the decease of the last surviving child, the trust fund was "to be disposed of for the benefit of the poor in the manner hereinafter provided." "It is my will that when, upon the decease of all my children, the trust fund is to be disposed of as aforesaid, the said Marsh and Guild, or their successors as trustees, shall select and appoint three or more gentlemen, who shall be informed of the facts by the trustees, and shall determine how, by the payment to permanently established and incorporated charitable institutions, my wish to benefit the poor will be best carried into effect, and my gift may be made most productive of benefit to the poor; and that thereupon the said trust fund (including the said shares of income retained) shall be disposed of, and paid over in accordance with the determination of the said gentlemen, certified in writing to the trustees." Marsh alone could not execute this power to appoint the persons who were to designate the institutions which were to receive the property, and inform them of the facts needful to guide or influence their judgment in the selection. This was not a power to appoint or select the donees of the property, nor to appoint the uses of the property. It was not a power over property. It was a naked authority, to nominate and appoint persons, who were to act for the testatrix in choosing the objects of her bounty, and to make known to them such facts as the two trustees should judge to be proper to guide or influence their judgment in the selection. It was a power to appoint persons, and not a power to appoint property; and from the nature of the case must be a mere naked power, in contradistinction to a power coupled with an interest. A power coupled with an interest means coupled with an interest in the property which is the subject of the power (Hunt v. Rousmanier, 8 Wheat. [21 U. S.] 174); and where, as in this case, property is not the subject of the power, the power cannot be coupled with an interest. A naked power to two persons by name cannot be executed by one. Peter v. Beverly, 10 Pet. [35 U. S.] 564; 1 Sugd. Powers, 144; 2 Story, Eq. Jur. § 1062, and cases cited. The intention of the testatrix to give this property to charitable institutions was never perfected. She intended to speak only through persons selected and informed by both Marsh and Guild. There being no such persons, there is no expressed will of the testatrix in behalf of the institutions which are respondents. Fontain v. Ravenel, 17 How. [58 U. S.] 369.

The power exercised by the chancellor to make cy pres applications of charitable bequests is not a judicial power, and does not exist in any court of Massachusetts. Wheeler v. Smith, 9 How. [50 U. S.] 55; Const. Mass. pt. 1, art. 30; Fontain v. Ravenel, 17 How. [58 U. S.] 369. There being no mode consistent with the will of the testatrix, of ascertaining the objects of her bounty, there is a resulting trust in favor of the complainants, who are her heirs at law. Nor is there any trust created by the will in favor of any particular person who would have a right to call for the execution of the power. The creation of the trust was to follow the execution of the power. Nor could the attorney general file a bill, because no trust in favor of charity has been created or brought into existence. The English law is not in force in Massachusetts. The case of Moggridge v. Thackwell, 7 Ves. 36, was decided against Lord Eldon's own views, and merely on the strength of precedents not binding here. Mills v. Farmer, 1 Mer. 100; Boyle, Char. 18--23; Fontain v. Ravenel, 17 How. [58 U. S.] 369. Nor can the court appoint some person to join Marsh in executing the power. Though the court may appoint a trustee, it will not appoint a person to execute a naked discretionary power of appointment of persons, who are to execute a power over property. Even the English courts, in charity cases, have not gone so far as that. The court itself executes the power, because it cannot appoint persons to execute it. If such a person should be appointed, he would not be a successor to Guild, who never was a trustee.

S. Bartlett, F. C. Loring, and C. W. Loring, for respondents.

The present case does not come within the statute of Massachusetts, which provides that when a will makes no provision for a child or the issue of a deceased child, they shall be entitled to a share of the estate, unless it appears that the omission was intentional. The will and codicil do provide for all the children of the testatrix living at their respective dates; and there was then no issue of a deceased child. The law proceeds upon the presumption that when such omission is made it is unintentional; but this cannot be presumed when there was in fact no omission made at the time. In relation to children born after the will is made, the case is different, because that case falls expressly within the letter and spirit of the statute. It is otherwise with reference to those who become the issue of a deceased child after the will is made, but who were in being before it was made, and for whose parent provision was made by the will. With regard to them, the will when made was perfectly good; and if their father had survived the testatrix, they could have claimed no interest. The statute does not provide that in case of the decease of a child for whom provision was made, the testator shall be considered as having deceased intestate as to his issue. But supposing the pro-

vision for all the children living at the date of the will and codicil is not sufficient, then, in cases like this, where the child dies before the testatrix, leaving issue, the statutes (Gen. St. c. 92, § 28) expressly provide that the issue take the devise of real or personal estate made to the child. The issue being provided for in this manner, cannot also come under the provisions of section 25. This succeeding section controls the provisions of section 25, as the issue of a deceased child cannot both take the devise to its parent and a full proportion of the estate; it must be one or the other, as both could not be intended, and may be impossible. The latter section, which provides for all cases where, after a devise to him, a child dies leaving issue, shows that it was not considered that such a case had been provided for by the preceding section, or it takes it out of the class of cases therein provided for.

The mention of the father in the testatrix's will and codicil, the devise to him for life, the disposal of the principal afterwards to others, and the other provisions of the will, are evidence that the issue of the father mentioned were in the mind of the testatrix, and that the omission was intentional and not by accident or mistake. In the construction of the statutes in force before the Revised and General Statutes, the supreme court of Massachusetts held that the question was a matter of intent. They came to this conclusion, although the statute of 1783 (chapter 24), giving a child without a legacy a proportion of the estate of its parent, did not have the provision of the present statute as to the omission being intentional and not occurring by accident or mistake. And the court decreed in Church v. Crocker, 3 Mass. 17, that a devise to the children of a son proved that the parent was in the contemplation of the testatrix, and that therefore he could not claim a distributive share. So in Wild v. Brewer, 2 Mass. 570, devise to grandchildren of daughter Sarah, was sufficient to show Sarah was in mind. Also Terry v. Foster, 1 Mass. 146. And in Wilder v. Goss, 14 Mass. 357, the mention of a son-in-law and a legacy to one grandchild, was held as raising an inference that the other grandchildren were not forgotten. A fortiori, a devise to a father shows that his children are not forgotten. If the legacy had been one cent to the father, his issue would have taken it, by statute, and the omission to notice the grandchildren would be held to be intentional. It makes no difference, in fact, as far as the grandchildren are concerned, whether the legacy to their father is this nominal one or a devise for life. By a devise for life to the father it is shown that he and consequently his family were in the testatrix's mind. By limiting the devise to the life of the father, and then giving the estate on his death to other persons in trust for the poor, the testatrix as expressly says that she does not mean the grandchil-

dren to be benefited by her estate, as if she in words had declared it.

The whole question is, whether from the will the inference is to be drawn that the omission was intentional, and not occasioned by accident or mistake. In Wilson v. Fosket, 6 Metc. [Mass.] 403, the court says the construction under the old law has been that whenever from the tenor of the will, or from any part of it, sufficient appeared to indicate that the testator had not forgotten his children or grandchildren (as the case might be) when he made his will, they would not be entitled to a distributive share of his estate, although no legacy was given them by the will. This principle, already adopted by the court, was also adopted as a statute provision by adding the words now contained in the General Statutes. In Converse v. Wales, 4 Allen, 512, evidence of wills previously made having the omission of the same grandchildren, was admitted to show intentional omission. If it does not appear by the will itself that the omission was intentional, it may be shown by parol evidence. Wilson v. Fosket, 6 Metc. [Mass.] 400. In administering the law in relation to charities, the United States courts are governed by the local law of the state, in the same manner as in relation to real estate. The prerogative power belonging to the sovereign has not been delegated to the federal government, but remains in the several states, and is exercised according to the usages or laws prevailing in each, and of course varying in every state; and whenever, by reason of citizenship or otherwise, a cause is brought before the United States courts touching the validity of a gift to charitable uses, the question to be considered is, whether it would be held valid or not by the courts of the state. Such has been the uniform doctrine of the United States courts from the beginning to the present day. Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.] 1; Beatty v. Kurtz, 2 Pet. [27 U. S.] 566; Inglis v. Trustees of Sailor's Snug Harbor, 3 Pet. [28 U. S.] 99; Vidal v. Girard's Ex'rs, 2 How. [43 U. S.] 127; Wheeler v. Smith, 9 How. [50 U. S.] 55; Fontain v. Ravenel, 17 How. [58 U. S.] 369. "The wide discretionary power which the chancellor of England exercises over infants, lunatics, or idiots, or charities, has not been conferred." These prerogative powers, which belong to the sovereign as parens patriae, remain with the states. "In a suit by an heir, a representative of the testator, to recover property or money bequeathed to a charity, the court must of necessity examine whether the bequest was valid or not by the laws of the state."

There is no conflict of authorities on this point. The question is then presented whether or not this bequest is valid by the laws of the state of Massachusetts. If it would be maintained by the courts of that state, it must be here. The control of the legislature as parens patriae over the administration of

charities, has been constantly exercised from the earliest date to the present, and jurisdiction over them vested in its courts. In Ancient Charters (page 52) will be found an act passed in 1641, respecting benevolent or charitable donations, by which it was ordered that all gifts and legacies to the colleges, schools of learning, or other public use, shall be faithfully disposed of according to the intent of the donors, and the persons entrusted therewith are required to account to the county courts. See, also, St. 1785, c. 51; Rev. St. c. 40, § 39, etc.; St. 1847, c. 213; St. 1849, c. 186, § 8; St. 1855, c. 302. By the General Statutes (chapter 14, § 20) it is made the duty of the attorney general to "enforce the due application of funds given or appropriated to public charities." By chapter 113, §§ 1, 2, the supreme court is vested with the whole jurisdiction of the English court of chancery. Hadley v. Hopkins Academy, 14 Pick. 240 (see pages 253, 262); Going v. Emery, 16 Pick. 114; Burbank v. Whitney, 24 Pick. 146; Bartlett v. Nye, 4 Metc. [Mass.] 378; Washburn v. Sewall, 9 Metc. [Mass.] 280; Sohier v. St. Paul's Church, 12 Metc. [Mass.] 250; Brown v. Kelsey, 2 Cush. 243; Winslow v. Cummings, 3 Cush. 358; Bliss v. American Bible Soc., 2 Allen, 334; Sanderson v. White, 18 Pick. 328.

These cases establish the equitable jurisdiction of the supreme court over charities in its fullest extent; that the statute of Elizabeth is a part of the common law of this state, and that it is the settled law of this state that an appropriation of property to charitable uses will be upheld; that it is no objection that no person is named capable of taking the legal interest; that the court will supply the place of a trustee, and will sustain and protect such a gift whenever it is consistent with public policy and local laws, and the intention of the donor can be accomplished; and if it cannot be literally carried into effect, will accomplish it as near as possible.

The intent of the testatrix is explicit and legal, and can be accomplished, and has been carried into effect, in the mode designated by her. The object of the testatrix was to benefit the poor,—an intent not inconsistent with public policy or local laws. The mode in which that intent was to be effected was by distributing the trust fund among established, incorporated, charitable institutions. The trust has been performed, the committee have been selected; they have performed the duty, and designated various institutions, having the qualifications required by the testatrix, to receive various sums of money. The only objection can be that the will does not designate the objects of her bounty. To this it may be answered: First, that being a gift to charitable uses, the courts of Massachusetts will carry out the intent and effect of the will; second, that the law considers as certain and definite that which can be made so, and that the will expressly provides for ascertaining with precision the objects of the bounty; third, that the courts of Massachusetts have frequently sustained gifts to charitable uses where the objects of the bounty were as uncertain as here. Hadley v. Hopkins Academy, 14 Pick. 240; Going v. Emery, 16 Pick. 107; Brown v. Kelsey, 2 Cush. 244. Bequest of money, the income to be appropriated for the support of evangelical preaching by such ministers as shall be approved by a majority of the members of the Middlesex Union Association. Devise of residue for the promotion of such religious and charitable enterprises as shall be designated by a majority of the pastors composing said association. Both held good as against the heirs at law. The statute of Elizabeth being a part of the common law of this state, and the laws regulating charitable uses being the same with those of England, the decisions of the English courts are authorities here. Attorney General v. Hickman, 2 Eq. Cas. Abr. 193; Attorney General v. Syderfen, 1 Vern. 224, 1 Eq. Cas. Abr. 96; Baker v. Sutton, 1 Keen, 224; Horde v. Earl of Suffolk, 2 Mylne & K. 59; Moggridge v. Thackwell, 7 Ves. 68.

The trust or authority vested in the named trustees, Marsh and Guild, to select and appoint a committee to determine what charitable institutions should receive the fund, was well executed by the survivor. The trust or authority was not personal, as it was to be exercised by those named or their successors; it could not be executed till the last of the children of the testatrix should decease,—an uncertain and probably remote period, before which it was possible if not probable, that the trustees named might decease. It was therefore provided that it should be exercised by their successors. It is well settled that a power given to trustees survives, and has been so for many years. Butler v. Bray, Dyer, 189; Attorney General v. Gleg, 1 Atk. 356. See Moggridge v. Thackwell, 7 Ves. 68; Lewin, Trusts, 299. In this case the trustees had an interest; the whole legal estate was vested in them, subject to the trust. As the question arises under a will made and established in this state, creating the trust now under consideration, the statutes of this state and decisions of its courts must furnish the law for this court, in relation to the appointment of trustees and the administration of the trust. See Greene v. Borland, 4 Metc. [Mass.] 330; Dixon v. Homer, 12 Cush. 43. If the devise was originally good, the property is wholly given away from the heirs. Sanderson v. White, 18 Pick. 328.

CLIFFORD, Circuit Justice. Obviously the first question involved is the construction of the statute of wills, and therefore is a question of local law. The universal rule is, in cases depending on the statute of a state, and more especially in those respecting the titles to lands, that the federal courts adopt the construction of the state tribunals when

that construction is settled or can be ascertained. Where the construction is settled by the state court, the rule is, that the federal courts will follow that construction; but when the question has not been decided by the state court, then the duty of ascertaining the true construction in the particular case is necessarily devolved upon the tribunal where the case is pending. The language of the provision under consideration is as follows: "When a testator omits to provide in his will for any of his children, or for the issue of a deceased child, they shall take the same share of his estate, both real and personal, that they would have been entitled to if he had died intestate, unless they shall have been provided for by the testator in his lifetime, or unless it appears that such omission was intentional, and not occasioned by accident or mistake." Gen. St. Mass. 1860, c. 92, p. 478, § 25. The same provision, and substantially in the same words, is contained in the statutes of the state, called the "Revised Statutes," passed twenty-four years earlier. Indeed the substance of the provision as held by the courts, may be traced back to colonial times. The colonial statute of 12 Wm. III., passed in the year 1700, provided in its second section that any child or children, not having a legacy given them in the will of their father or mother, shall have a proportion of the estate of their parents given and set out unto them as the law directs for the distribution of the estates of intestates, provided such child or children have not had an equal proportion of his estate bestowed on them by the father in his lifetime. The preamble of the section refers specially to the fact also that many children are born after the making of the will, showing conclusively that after-born children, as well as those omitted in the will who were in being at its date, were intended to be included. Doubts, however, arose whether it included grandchildren, but the legislature, on the 18th of May, 1718, passed a resolve declaring the affirmative of the proposition, and such, ever after, was the received construction. Ancient Charters, c. 7, p. 351, § 2. The phraseology of the provision was somewhat changed in the act of the 6th of February, 1784, and the preamble was entirely left out. 1 Laws Mass. 1800, p. 111. By the eighth section of that act it is provided that any child or children, or their legal representatives, in case of their death, not having a legacy given him, her, or them in the will of their father or mother, shall have a proportion of the estate of their parents assigned unto him, her, or them, as though such parent had died intestate, provided such child, children, or grandchildren have not had an equal proportion of the deceased's estate bestowed on him, her, or them in the deceased's lifetime. The earliest decision of the courts of the state upon the subject is that of Wild v. Brewer, decided in 1797, and reported in the supplement of 2 Mass. 571. The testator

in that case devised the income and improvement of his real estate to his wife, during her natural life, and then directed that, at her decease, the same should be divided among his grandchildren, describing them by their respective names, and as "children of my daughter Sarah," giving the estate to them "in equal parts or portions forever, for them to improve and dispose of as they may see fit," but he made no provision for his daughter, the mother of the devisees. She, with her husband, petitioned for partition of the estate, claiming a distributive share as heir at law, and the case was submitted to the court, upon an agreed statement of facts. Held, that she was not entitled to a portion of the estate as though the testator had died intestate. The next case is that of Terry v. Foster, 1 Mass. 146, decided in 1804, and is the first case upon the subject reported in the regular series of reports. The appellants in that case were the grandchildren of the testator; and the report of the case shows that their mother, the daughter of the testator, deceased before the date of the will. The material provision of the will was: "I give to my daughter Mary Russell, five dollars, and to my daughter Bushop, five dollars; to my grandchildren of my daughter Terry, deceased, to be paid to them when the youngest of them comes of age." Doubts were entertained by all the judges, whether any legacy was actually given to the appellants, but they all held that the act of the 6th of February, 1784, did not repeal the colonial statute, and that any child or grandchild being noticed or mentioned in a will showed that he was not forgotten; that the statutes taken together as in pari materia, extended only to cases of entire omission; that it was not necessary that the child or grandchild should have a legacy to exclude them, but that it was sufficient if it appeared by the will that the testator had not overlooked the claimant. Three years later the case of Church v. Crocker, 3 Mass. 17, was presented for decision. The report of the case shows that the testatrix in that case, gave one-fifth part of the residue of her estate to her six grandchildren, the children of her son Edward, but no legacy was given to Edward himself. The argument for the plaintiff was, that inasmuch as no legacy was given him in the will, he was undeniably entitled to a distributive share in the estate; but the court held otherwise, after the fullest consideration. Public policy, say the court, requires that the right of testamentary disposition in parents respecting their children, should be exercised at their discretion; and they held that the intention of the eighth section was, not to limit this discretion as distinctly conferred by the first section of the act, but to provide for a child or grandchild when this discretion from accident or some other cause had not been exercised. The conclusion was, that when a child is named in his parent's will, although he has no legacy given him,

he is not entitled to a distributive share of the estate, because that fact shows that the child was in the mind of the testator at the time the will was prepared, and consequently that it cannot be held that he was omitted by accident or mistake. The last case under that statute is that of Wilder v. Goss, 14 Mass. 357, which has an important bearing upon the question under consideration. It is shown by the statement of the case that the daughter of the testator died before the testator, and before he made his will, leaving seven children who survived their grandfather. The wife of the appellant claimed a distributive share in the estate, as heir at law, because she had no legacy given her in the will, and was not named in the same. The name of the mother of the claimant was Rebecca Thurston. Among other things, the testator stated in the will that having before that time conveyed to his son-in-law, John Thurston, the principal part of his real estate, he should make no further devise to him, but gave a legacy to Thomas Thurston, brother of the claimant, and then the residue of his estate to his other three daughters, who were living. The facts show that the claimant was an heir at law to the estate of the testator when the will was made, and that she neither had any legacy given her nor was she named in the will. But the court held that the mention of her father by the testator as his son-in-law, and the giving of a legacy to her brother, must have brought the recollection of his deceased daughter to his mind, and showed that the family was in his remembrance, and consequently that she, was not entitled to a proportion of the estate. Whenever it appears, say the court, that the testator has, through forgetfulness or mistake, omitted to bestow anything upon his child or grandchild, the legislature wisely intended to effect that which it was highly reasonable to believe the testator, but for such forgetfulness or mistake, would himself have done. But the court insist that to go further than that, would be to defeat the principal intention of the legislature in the first section of the act, which authorizes every person seized of an estate in lands which may extend beyond his own life, to devise the same as he shall see fit. Consequently, whenever it may fairly be presumed from the tenor of the will, or of any clause in it, that the testator intentionally omits to give a legacy or to make a devise to his child or grandchild, whose parent is dead, the court will not interfere. Such were the views of the supreme court of the state, in the several cases which arose under the statute of the 6th of February, 1784; but the court went further in the case of Wilson v. Fosket, 6 Metc. [Mass.] 400, which is a case that arose under the Revised Statutes of 1836, and held that it was not necessary that it should appear by the will itself that such omission was intentional, but that it may be shown by parol proof; and such, it

is believed, is the settled doctrine of the state court.

Referring to the prior decisions, the court say the construction has been, that whenever, from the tenor of the will or from any part of it, sufficient appeared to indicate that the testator had not forgotten his children or grandchildren (as the case might be) when he made his will, they would not be entitled to a distributive share of his estate, although no legacy was given them by the will. The emphatic language of the court is, that whatever may have been the grounds of the decision, it came to be well settled that the object of the prior statute was to furnish a remedy solely for those cases where, from accident or other causes, the child or grandchild might be supposed to have been really forgotten by the testator in making his will.

Reference is then made to the decided cases which affirm that doctrine, and it is undoubtedly true that they sustain the proposition. The construction given to the provision in the prior act was adopted in the Revised Statutes, which "introduced the broad principle of barring a child of a claim to a distributive share, upon its being made to appear that such omission to give a legacy was intentional and not occasioned by any mistake or accident." Wilson v. Fosket, 6 Metc. [Mass.] 404, decided in 1844. After-born children, it will be remembered, were included in the provision contained in the colonial statute, and the twenty-second section of the Revised Statutes expressly provided that when any child of a testator, born after the father's death, shall have no provision made for him by his father in his will or otherwise, he shall take the same share of his father's estate, both real and personal, that he would have been entitled to if his father had died intestate. Rev. St. 1836, p. 419. Explicit as this provision is, it still left the question as to what the rule should be in a case where a child was born after the making of the will and before the death of the father, quite undetermined. No such question was presented to the state court until 1855, when it came up in the case of the will of Thomas P. Bancroft. Bancroft v. Ives, 3 Gray, 367. The agreed statement in the case shows that the testator, having married the plaintiff in that case, had three children by her, and made his will, giving a legacy to each of the children and the residue to his wife. Said children all died in the lifetime of the testator, unmarried and without issue. But two other children were afterwards born to him, who were in full life at the date of the controversy. Plaintiff claimed the whole estate, but the court held that the provision under which any child for whom its father "shall omit to provide in his will is entitled to a share in his estate, unless such omission was intentional," applies also to children born after the making of the will and before the death of the father? Speaking of that provision as

contained in the Revised Statutes, the court say: "We think it manifest that it was not the intention of the commissioners and legislature to alter the law in this respect, but only to give effect to the old statute, and to affirm and give the authority of positive law to the construction which had been put upon it in several cases." Some of the remarks of the chief justice who gave the opinion, are supposed to be inconsistent with that view of the law, but the opinion itself affords conclusive refutation of that suggestion. Proof of that statement is found in the quotation already given from the opinion, and if more be needed, it will be found in the fact that the court cites with approbation every one of the prior cases which contributed to establish that construction. Omission to provide for children born after the will and before the death of the father, may well be regarded as occasioned by accident or mistake, in a case where the will, made before their birth, gave legacies to all the living children. Hence the court say in that case, "taking his will and the legacies therein given to the children then living, it appears that it was not his intent to omit any of his children, but to give each a legacy," as therein provided.

The true rule therefore is, that a child or the issue of a deceased child, when the testator omits to provide for him in his will, is entitled to a distributive share in the estate, unless it appears that such omission was intentional, and not occasioned by accident or mistake. "Whenever, from the tenor of the will, or from any part of it, or from parol proofs, or both combined, sufficient appears to show that the testator had not forgotten his children or grandchildren, as the case may be, when he made his will, no such child or grandchild is entitled to a distributive share in his estate, although no legacy was given him by the will." Direct decision is made to that effect in Wilson v. Fosket, 6 Metc. [Mass.] 403; and there is nothing in the remarks of the chief justice in Bancroft v. Ives, 3 Gray, 370, to overrule or qualify that doctrine. Undoubtedly a testator may revoke, republish, alter, or modify his will by any codicil or number of codicils quite up to the time of his death; and in that sense, it may be said that a man's will is ambulatory; but it by no means follows, if a man makes a will and dies without revoking, republishing, altering, or modifying it, that it must not be construed as of the date when it was made; and if it appears that a child or grandchild having no legacy was intentionally omitted, and not by accident or mistake, such child or grandchild is not entitled to a distributive share. It must be so, else it is not true, as is provided in the first section of the statute of wills, that every person of full age and of sound mind, may devise and dispose of his estate therein described, by his last will and testament in writing. Nothing need be said in explanation of the remark that all the testamentary papers, in force and capable of taking effect at the decease of the testator, constitute his will, as it is a remark which all must approve, and in that view, unquestionably the time to which the question of omission applies, is the time of the testator's decease; but it cannot be that the court in that case intended to hold that evidence of prior acts and declarations of the testator were not admissible, as tending to show whether the supposed omission was or was not, intentional at the time the will was made. Assuming such to be the effect of that remark, then it is directly contrary to the ruling in Wilson v. Fosket, 6 Metc. [Mass.] 403, and is expressly overruled by the case of Converse v. Wales, 4 Allen, 512, which is the latest case upon the subject. It was alleged in that case, that the omission was intentional, and that it was not occasioned by accident or mistake; and to prove those facts, the respondents were allowed to introduce evidence of the declarations of the testator, made before and after the will, during a period of twenty years, and they were also allowed to introduce several former wills, in which no provision was made for the petitioners. The instructions of the court to the jury were also to the same effect; and the petitioners excepted to the ruling of the court in admitting the evidence, and also to the instructions of the court.

The opinion was given by Chief Justice Bigelow. He held that in the absence of written evidence there was no mode of proving the intent of the deceased testator, in such a case, more direct and satisfactory than by his acts and declarations on the subject while living, and that the previous wills made by the testator are in the nature of declarations having a direct bearing on the issue. They tend, say the court, directly to show if the same omission exists in them as is found in the will offered for probate, that it was not occasioned by forgetfulness, mistake, or any accidental circumstances, but was the result of a well-settled and deliberately formed purpose. Doubt cannot be entertained, if prior wills are admissible to prove that the omission was intentional, that subsequent codicils are also admissible for the same purpose. Applying those principles to the present case, it is quite obvious that the question under consideration is one of fact, to be determined from the tenor of the will, the attending circumstances, and the parol proofs exhibited in the case. Take the facts as they appear on the face of the will and the codicil, and they are sufficient to show that the complainants were intentionally omitted, and not by mistake or accident. One third of the net income of the remainder of the estate was given in the will to the father of the complainants during his natural life, and he and the complainants were living at the date of the will. By the terms of the

will the legacy to the father was limited to his life, but the devise over for the benefit of the poor is plainly and clearly expressed. All the parties were then living; and there is not a doubt entertained by the court, as matter of fact, that it was the settled purpose of the testatrix to omit the complainants, and to dispose of the inheritance as specified in the will. Reasonably considered, nothing else can be inferred from the carefully arranged terms in which the legacy to the father and the devise over are expressed. Strong confirmation of this view is found in the terms of the codicil. The codicil was executed on the 14th of July, 1859, after the death of Cornelia W. Thompson, as before explained, and its language is: "I revoke so much of my said will as provides for the said division of the said income, and its payment in three parts." Mention is made of the death of her daughter Cornelia, and she orders and directs that the income of the estate shall be paid, under the conditions and provisions contained in the will, to her two surviving children by their respective names, during their joint lives, and one half thereof to the survivor of them, showing, in the language of Chief Justice Bigelow, that it was the result of a well-settled and deliberately formed purpose. Irrespective, therefore, of the parol testimony, I am of the opinion that it appears, from the tenor of the will when taken with the codicil, that the omission of the complainants, if such it may be called, was intentional, and was not occasioned by accident or mistake, within the meaning of the provision under consideration, in the Massachusetts statute of wills, as expounded by her courts. Ample provision was made for the father of the complainants, and it makes no difference that the legacy to him was limited to his life, because the fact of that limitation in the will, and its careful repetition in the codicil, especially when taken in connection with the devise over for the benefit of the poor, show conclusively that the entire disposition of the estate was in accordance with the settled purpose of the testatrix. But if there could be any doubt upon this subject, the parol testimony introduced by the principal respondent is conclusive that there is no legal merit in the claim of the complainants. Suffice it to say, without reproducing the evidence, that it is fully proved that the testatrix repeatedly said that her son should have his share of the income during his life, but that his children should not have any portion of her estate after his decease; and the witnesses say that her declaration was that the son should have the use of one third of the property during his life, and that after his decease it should go for charitable purposes. Such proofs coincide with the tenor of the will, and with all the presumptions to be drawn from the surrounding circumstances, and when considered in connection with those circumstances and the unmistakable inferences to be drawn from the tenor of the will, they afford

a demonstration that the claim of the complainants has no legal foundation. Strong doubts are entertained whether grandchildren living at the date of the will of the grandfather, can ever be regarded as omitted because not named as legatees in his will, in any sense within the meaning of the statute, where it appears that their father was living at the same time, and was provided for in the will. Plainly they cannot be so regarded if the father is the donee of an inheritable estate, because it is expressly enacted, that where such a legacy is given to the father and he dies before the testator, his children shall take the legacy given to him in the will. Gen. St. c. 92, p. 479, § 28. The same conclusion must follow where the legacy to the father is of an estate for life, if the remainder is also devised, unless it be assumed that a devise by a father to his children for life and a remainder over to third persons is void, in case one of the children dies before the father, leaving issue. Grant that proposition, and then it is not true, as enacted in the first section of the statute, that every person may devise and dispose of his estate by will in writing. Carefully examined, the claim of the complainants is not founded upon any accident or mistake in the testatrix, but it is indubitably an attempt to restrict and qualify the right of parents to dispose of their estate by testamentary devise. Children are omitted when no legacy is given them, and they are in no manner named in the will, as exemplified in the decisions of the state court. Grandchildren stand upon the same footing where it appears that their parent died before the execution of the will, because, in that state of the case, they are the issue of a deceased child, and fall directly within the provision upon that subject. Posthumous children fall within the same category, because they are within the express words of the colonial statute; and under the decisions of the courts, it is also settled that children born after the date of the will and before the death of the testator shall have the same rights. In all these cases the foundation of the right, as expounded by the courts is, that the omission was unintentional and through accident or mistake, as appears by all the decisions of the state courts. But in the case at bar, there is no such foundation or just pretence for it, and therefore the rule cannot apply. The testatrix, when she made her will, gave legacies to all her children, and when one deceased without issue she made a codicil, and did the same thing for all who were living, including the father of the complainants. As before stated, they were born before the will was made, and neither child nor grandchild was born after the will was executed. All of the circumstances were in the mind of the testatrix both when she made the will, and when she afterwards deliberately modified it, and nothing occurred subsequently, to give the least coun-

tenance to the theory that there was any such mistake or accident as the law contemplates, to warrant the interference of the court.

The complainants scarcely deny that the power conferred upon the trustees in the will, to select and appoint the committee, could be executed by the surviving trustee, provided it be held that the power is one coupled with an interest, but they contend that it is a mere naked power to two persons which cannot be executed by one. The substance of that provision of the will is, that "when upon the decease of all my children, the trust fund is to be disposed of as aforesaid," that is, for the benefit of the poor, "the said Marsh and Guild, or their successors as trustees, shall select and appoint three or more gentlemen, who shall be informed of the facts by the trustees, and shall determine how, by the payments to permanently established and incorporated charitable institutions, my wish to benefit the poor will be best carried into effect," &c. Three persons were accordingly selected and appointed by the surviving trustee, and they have determined that the several corporations made parties respondents, shall be the recipients and beneficiaries of the testatrix's bounty. The record shows that the power has been executed, but it is insisted by the complainants that the proceedings are a nullity. The courts of the United States cannot exercise any equity powers, except such as are conferred by an act of congress, and those judicial powers which the high court of chancery in England under its judicial capacity, as a court of equity, possessed and exercised at the time of the formation of the constitution of the United States. Powers not judicial, exercised by the chancellor as the representative of the sovereign and by virtue of the king's prerogative as parens patriae, are not possessed by the circuit courts. Fontain v. Ravenel, 17 How. [58 U. S.] 390. The supreme court hold that the prerogative power belonging to the sovereign, has not been delegated to the federal government, but remains in the several states, and is to be exercised according to the laws and usages prevailing in the several states. Consequently, whenever, by reason of citizenship or otherwise, a cause is brought before the federal tribunals involving the validity of a bequest or devise to charitable uses, the question to be considered always is, whether it would be held valid or not in the courts of the state. Numerous decisions of the supreme court assert this doctrine, and it has been the uniform course of the court. Trustees of Philadelphia Baptist Ass'n v. Hart's Ex'rs, 4 Wheat. [17 U. S.] 1; Beatty v. Kurtz, 2 Pet. [27 U. S.] 566; Inglis v. Sailor's Snug Harbor, 3 Pet. [28 U. S.] 99; Wheeler v. Smith, 9 How. [50 U. S.] 55. The state decisions cited for the principal respondent show beyond controversy, that the equitable jurisdiction of the supreme court of

the state is established over charities in its broadest application; that the statute of Elizabeth is part of the common law of the state, and that it is the settled course of judicial decisions that a devise of property to charitable uses will be upheld. Argument in support of those propositions is unnecessary, as the authorities to support them are numerous, direct, and conclusive. Authority to select and appoint the committee was not a personal trust, because it is expressly provided in the will that it shall be executed by the persons named, or their successors as trustees. The directions of the testatrix in that behalf were not to be carried out until the decease of all her children, and as they or some one of them might live for many years, it was provided, that if the persons named as trustees deceased before the time designated for the selection and appointment arrived, the duty might be performed by their successors.

The terms of the will show that the entire estate was vested in the trustees, and their successors as trustees, and they were authorized to sell and convey any and all real estate which might at any time be in their hands, according to their joint and sole discretion. Looking at the terms of the will, no doubt is entertained that the power in question is one coupled with an interest. Such a power survives, and may be exercised by a surviving trustee, or by successors. Butler v. Bray, 2 Dyer, 189; Attorney General v. Gleg, 1 Atk. 356; Lewin, Trusts, 299. Suppose, however, that any doubt could arise upon the subject under the general equity law, still, the decisions of the state courts fully support the proposition, and they must be regarded as conclusive. Greene v. Borland, 4 Metc. [Mass.] 330; Dixon v. Homer, 12 Cush. 43; Dexter v. Gardner, 7 Allen, 243.

Sufficient has already been remarked to show that the third proposition of the complainants cannot be sustained, because it is made to appear that the intention of the testatrix to give the property for the benefit of the poor, has been legally carried into effect. Other propositions were submitted by the complainants, but they are so fully answered by the state decisions, that it seems quite unnecessary to enter into argument upon the subject. Unless the state decisions are to be overruled, it is plain that the second and third propositions of the complainants cannot be sustained. In view of the whole case, I am of the opinion that the complainants are not entitled to relief.

Bill of complaint dismissed with costs.

[NOTE. This case was, upon appeal to the supreme court by the complainants, affirmed. Mr. Justice Nelson, who delivered the opinion of the court, considered at length the Massachusetts statute providing for omissions in wills of provision for children or their issue. In this case he considered that the omission was intentional. He said: "Our conclusion on this branch of the case is that, upon a perusal of the provisions of the will, regard being had to the course of deci-

sion under the statute in the courts of the state, it sufficiently appears, especially in connection with the oral proof, that the omission to provide for the issue of the deceased son in the will was intentional, and not by accident or mistake." The contention that the power conferred by the will upon Marsh and Guild was a mere naked power, and as such not competent to be executed by the survivor, or one of these, he considers in this case not tenable. He says: "Inasmuch as the trustees are invested with the legal estate, in order to enable them to discharge the trusts already declared, it is well settled that the power conferred is a power coupled with an interest, which survives, on the death of one of them, and may be executed by the survivor. It is not necessary that the trustees should have a personal interest in the trust ; it is the possession of the legal estate, as a right virtute officii in the subject over which the power is to be exercised, that makes an interest. which, when coupled with the power, the latter survives. A trust, therefore, will survive when in no way beneficial to the trustee." 6 Wall. (73 U. S.) 337.]

LORING (PAIGE v.). See Case No. 10.672.

LORING (SEAMANS v.). See Case No. 12,-583.

LORING (SOMBOY v.). See Case No. 13,168.

LORING (TATHAM v.). See Case No. 13,-763.

LORIO (BRAGG v.). See Case No. 1,800.