## Norris S. Chandler *vs.* Mary C. Rider.

A testator, in his will, gave to A. the use of his house so long as she should remain a widow; "if it is deemed best to have the house sold," she "to have the interest for her use;" and "at her decease, if B. and C. are living, I wish them to share equally in the avails of the house;" and appointed two executors, one of whom died before the probate of the will. *Held,* that the surviving executor had power to sell the house, if in the course of administration it was necessary or advisable to do so.

CONTRACT on the covenants of seisin and against incumbrances in a deed of real estate executed by Adam C. Rider to the plaintiff. Trial in the superior court, without a jury, before *Putnam,* J., who ruled that the plaintiff was not entitled to recover on the case which is stated in the opinion, and gave judgment for the defendant. The plaintiff alleged exceptions.

*M. P. Knowlton,* for the plaintiff.

*H. Morris,* for the defendant.

AMES, J. The plaintiff's claim is founded upon the assumption that a deed of the land from Nancy Swift and Lydia S. Wright to Adam C. Rider, his grantor, conveyed no valid and

legal title; and that, for that reason, the defendant, as heir at law of Adam C. Rider, is liable on the covenant of seisin, and the covenant against incumbrances, contained in said Rider's deed to the plaintiff. Whether enough is disclosed in the case, even upon that assumption, to show a breach of either of those covenants, is a question that we have not had occasion to consider.

The question arises upon the following state of facts: The last will and testament of Frances B. Wright, (which is very brief, and quite inartificially drawn,) provides that Lydia S. Wright, the relict of the son of the testatrix, is to have the use of the house and furniture, " and all that I possess," (to quote the language of the will,) " so long as she remains the widow of my son Henry Wright." The will then, without in express terms saying that the house is in any event to be sold, or, if so, by whom or for what precise reason, makes the following provision: " If it is deemed best to have the house sold, she is to have the interest for her use, with the furniture. At her decease, if her son Henry Swift Wright and Fanny Maria Wright are living, I wish them to share equally in the avails of the house and furniture." She then names her son " John B. Wright and Miss Nancy Swift " as executors of her said last will and testament. John B. Wright having died, the will was proved, and Nancy Swift was appointed sole executrix. Afterwards, namely, January 2, 1866, Nancy Swift and Lydia S. Wright joined in a deed of the premises to the plaintiff's grantor; the deed reciting that Nancy Swift, " executrix of the last will and testament of Frances B. Wright, by virtue of a power contained in and conferred by said will," and in consideration of $1067, &c., gives, grants, sells and conveys the premises; and that Lydia S. Wright, " to whom was devised the use of the premises so long as she should remain the widow of Henry Wright, agreeing with the said Nancy Swift, executrix, in deeming it best to have said land and the house thereon sold," remised, released and forever quitclaimed the premises to said Rider, &c. The said Rider afterwards gave a deed of general warranty, purporting to convey the house and land to the plaintiff.

It is undoubtedly true that, by the strict rule of the common law, a naked authority, given to two or more persons, to sell and convey real estate, must be exercised by all of them jointly, and in case of the death of one or more of them, the survivors could not legally exercise the authority. In one of the earliest cases, where two persons were appointed executors of a will, and the devise was that the executors should sell real estate, the judges held that, upon the decease of one of them, the survivor had no legal authority to make the sale. *Danne* v. *Annas*, Dyer, 219 *a.* But upon this point there is some conflict of authority among the early cases; and it was held in *Howell* v. *Barnes*, Cro. Car. 382, in a case where the decision of the court was that the executors took only an authority to sell, and not a devise upon the trust that they should sell, yet, upon the decease of one, the authority of the surviving executor still continued, and his separate deed would be a valid conveyance. The St. 21 Hen. VIII. *c.* 4, provided, in explicit terms, that a sale under such a power should be valid and sufficient, if it were made by all of the executors who should accept the trust; and Lord Kenyon, in *Withnell* v. *Gartham*, 6 T. R. 396, describes this statute as one that was enacted for the purpose of preventing and removing the doubts that had arisen in relation to this subject. It is now well established, under " the liberality of modern times," that, in every case where such a power is given to executors as such, and *ratione officii*, the surviving executor may sell under the power. The office itself would go to the survivor, upon the decease of a coexecutor, and it is certainly reasonable that the incidents and trusts attached by the will to the office should survive with the office itself. Co. Lit. 113 *a.* Mr. Hargrave, in his note upon this passage, not only maintains that, where the power is conferred upon two executors, but also where it is given to two persons by name, who in a subsequent clause of the will are appointed executors, the power would survive to one upon the decease of the other. The latter branch of this proposition is treated as somewhat questionable in Sugden on Powers, (8th ed.) 126, (*c.* 4, § 1, *cl.* 73 *& seq. ;*) but it seems now to be well settled that, where the power is conferred upon two or

more executors, and the will does not expressly and plainly point to a joint exercise of the power, a single surviving executor may carry it into effect.

In the case at bar, the will does not say in terms by whom the power of sale is to be executed. The only limit upon the discretion with which the power is to be exercised is contained in the words "if it shall be thought best." We think that these words can only mean that the house shall be sold, if in the course of the administration of the estate it should be found necessary or advisable to take that course. It is also very plain that the proceeds of the sale are to be put upon interest by somebody, and not to be finally distributed till after the decease of Lydia S. Wright. Until her decease, she is to have the interest of that fund; and after her decease, the avails of the house and furniture are to be divided between the two children. These circumstances certainly furnish a strong implication that the trust and duty of retaining and investing the proceeds, paying the interest of it to her during her life, and then dividing the avails of the real estate and of the personal estate also between the ultimate beneficiaries, are incident to the administration of the estate under the will; and if so, the executors, as having the distribution, would also have the authority provided for by the terms of the will. The authorities are explicit to the point that such is a reasonable construction of a will which creates the power without saying in terms by whom it is to be exercised. *Davoue* v. *Fanning*, 2 Johns. Ch. 252.

We must construe it, therefore, as a power to the executors, as such, in their official capacity, and *virtute officii*, and not to them as individuals, or as matter of mere personal and individual trust. It is also a power coupled with a trust, and not a mere naked power. Its exercise is necessary (if it should be found expedient to make the sale) to the administration of the will according to the intent of the testator. At the time of the sale to Rider, Nancy Swift was sole executrix, and, according to the authorities, the power, being wholly *ratione officii*, survived to her with the office itself. *Warden* v. *Richards*, 11 Gray 277. *Jackson* v. *Ferris*, 15 Johns. 346. *Zebach* v. *Smith*, 3 Binn. 69. *Exceptions overruled.*