FRANCIS E. PARKER & others, administrators, *vs.* FREDERICK R. SEARS.

Suffolk. March 16, 17. — May 8, 1875. AMES & ENDICOTT, JJ., absent.

A woman, by an antenuptial settlement, conveyed all her real estate to three trustees by name, one of them being her future husband, "and their assigns and to the survivors and survivor of them, his heirs and assigns," with a power to "the said trustees" to sell "at any time whenever they shall deem it expedient," the sale, if made in her lifetime, to be with her consent. It was further provided, that in case of the death, resignation or removal of either of the said trustees during the lifetime of the settler, a new trustee should be appointed by her to fill the vacancy, and in case of such vacancy after the settler's death, such new trustee should be appointed by the surviving trustees, subject to the approval of the judge of probate; and in either case all such conveyances should be made as should vest the estate in the new trustee jointly with the others, and thereupon the new trustee should have and exercise all the powers and perform all the duties belonging to and imposed upon the original trustees. One of the trustees died, and the other two, with the consent of the settler, conveyed the land. *Held,* that a good title passed, and that the grantee could maintain a bill in equity for specific performance against one who had agreed to buy the land of him.

Trustees to whom real estate is devised with a power of sale, and who are exempt from giving bond under the Gen. Sts. *c.* 100, § 2, by reason of the testator's request that they be "exonerated and excused" therefrom, may legally execute the power without an appointment or letter of trust from the Probate Court; and a bill in equity for specific performance may be maintained against one who has agreed to purchase land and who relies on the fact, that his seller *d* 'rived his title under such a conveyance, as a defect in the title.

BILL IN EQUITY by the administrators of the estate of Cyrus Wakefield, for the specific performance of a written agreement, made at a sale by auction by the plaintiffs under a license from the Probate Court, by which the defendant agreed to purchase a parcel of land in Boston, known as the Studio Building estate.

The answer set up that by the terms of the sale the purchaser was to have until a certain date to examine the title, and that " if it shall appear that any material act or thing is necessary to be done or performed, in order to perfect the title to said premises, which the seller is unable to do or perform within a reasonable time, not exceeding sixty days from date hereof, then the sale shall be void, at the option of either party;" and alleged the following defects in the title, which had not been remedied by the plaintiffs within the time specified:

1. That one undivided third part of said estate was at one time owned by Frances G. Fessenden; and said Frances being about to be married to Clarence Gordon, an antenuptial settlement was made by an indenture dated May 1, 1861, and executed at or about that time, between her as party of the first part, John M. Fessenden, Clarence Gordon and John B. Fessenden of the second part, and said Clarence Gordon of the third part, in which indenture, after a recital of the contemplated marriage, Frances conveyed to the parties of the second part said one undivided third part of said estate, to have and to hold upon certain trusts and to certain uses and with certain powers, provisos and agreements, set forth in said indenture in the following words: " To have and to hold the said granted premises to them, the said John M. Fessenden, Clarence Gordon and John B. Fessenden and their assigns, and to the survivors and survivor of them, his heirs and assigns, but in trust, nevertheless, for the uses and purposes hereinafter set forth and declared :

" First. Until the solemnization of the said intended mar riage, to the sole use of the said Frances G. Fessenden, her heirs and assigns.

" Second. From and after the solemnization of the said intended marriage, and during the coverture of the said Frances G., to hold the said real estate and personal property, and to manage the same according to their best judgment and discretion, and to receive the rents, profits and income of the same, and after paying all expenses incident to the said property, and to the execution of the said trust, to pay over the residue of said rents, profits and income to the said Frances G., upon her sole and separate receipt, free from the control or interference of her husband.

" Third. Upon the decease of the said Clarence Gordon, during the lifetime of the said Frances G., to convey, transfer and assign all the said trust estate and property, however the same may be invested, to the said Frances G., to hold to her, her heirs and assigns, free and discharged from the trust hereby created.

" Fourth. In case of the decease of the said Frances G. in the lifetime of the said Clarence Gordon, to hold the said trust estate and property to and for the use of such persons as the said Frances G. shall direct and appoint by her last will and testament, or by any instrument in the nature of a last will and testament, (which, notwithstanding her coverture, she is hereby authorized and empowered to make,) and the same to convey to such persons, for such estates, in such manner and subject to such limitations as the said Frances G. shall thus direct and appoint.

" Fifth. But in case of decease of the said Frances G. in the lifetime of the said Clarence Gordon, leaving no such will, and having made no such testamentary appointment, then to hold the said trust estate and property to and for the use of any child or children of the said Frances G., then living, and of the issue of any deceased child, by right of representation, until the arrival of such child or children at the age of twenty-one years ; and upon the arrival of such child or children, (if more than one,) respectively, at the age of twenty-one years, to pay over to him, her or them, respectively, their several shares of the said trust estate and property ; and in case of the decease of any such child or children, leaving no issue, to hold the share of such deceased child in the same manner to and for the use and benefit of the surviving children of the said Frances G., the issue of any deceased child in all cases taking the share of the deceased parent by right of representation.

" Sixth. In case of the decease of the said Frances G. in the lifetime of the said Clarence Gordon, leaving no will or testamentary appointment, nor any issue living at her decease, or in case of the decease of all the children of the said Frances G. under the age of twenty-one years, leaving no issue living, to hold the said trust estate and property to and for the sole use of the heirs at law of the said Frances G. and their heirs and assigns forever.

" And whereas a sale of said trust estate, or of some part thereof, or a change of investment of the said personal property may become expedient, it is hereby expressly agreed that such sale or change of investment may be made by the said trustees at any time whenever they shall deem it expedient, provided always that such sale of the real estate, if made during the lifetime of the said Frances G., shall be made with her consent, testified by her joining in such conveyance ; and upon such sale the said trustees are authorized to make, execute and deliver good and sufficient deeds to convey the same to the purchaser or purchasers ; and such purchaser or purchasers shall not be bound to see to the application of the purchase money. And upon such sale and conveyance the said trustees shall invest the net proceeds in such other real estate or personal property as they shall deem best, and as the said Frances G. shall in writing direct, to be held upon the same trusts and for the same uses and purposes and subject to the same limitations as are herein set forth and declared of and concerning the estate and property hereby conveyed.

" And whereas the said real estate hereby conveyed is subject to certain mortgages, and it may be necessary and expedient, in case payment of the same shall be demanded, to raise money for that purpose by a new mortgage or mortgages of the said land and real estate, or of a part thereof : now, therefore, full power and authority is hereby given to the said trustees to mortgage the said real estate, or to join with the owners of the other undivided portions thereof in any mortgage for the purpose of raising such sum or sums of money as may be necessary to discharge the present existing mortgages, or any of them ; and such mortgage so made to secure the note or bond of the said trustees, or of the said Frances G., or of the said Clarence Gor-

don, shall constitute a good and valid lien on the said real estate. In case of the decease, resignation or removal of either of the said trustees during the lifetime of the said Frances G., a new trustee shall be appointed by her to fill the vacancy; and in case such vacancy shall occur after the decease of the said Frances G., such new trustee shall be appointed by the surviving or remaining trustees, subject to the approval of the judge of probate for the time being of the county of Norfolk; and in either case all such conveyances and transfers shall be made as shall vest the trust estate and property in such new trustee jointly with the surviving and remaining trustees, and thereupon the new trustee shall have and exercise all the powers and perform all the duties belonging to and imposed upon the trustees herein named. No trustee under this indenture shall be liable for any loss, except such as shall be caused by his own wilful default and negligence. It is understood and agreed that the said trustees may, with the consent and approval of the said Frances G., appoint the said Clarence Gordon to be their agent in the management of said property and estate, with the right, however, to revoke such appointment at their pleasure. The said parties of the second part hereby signify their acceptance of the said trust, and the said party of the third part declares his assent to the provisions of this indenture."

The answer then alleged that afterwards John B. Fessenden died, and John M. Fessenden and Clarence Gordon, surviving trustees under the indenture, together with Frances G. Gordon, in token of her consent to the conveyance, and with Mary B. Fessenden, claiming to be seised in fee simple of another undivided third part of said real estate, and Guy M. Fessenden and Charles T. Child, trustees under the will of John B. Fessenden, claiming to be seised in fee simple of another undivided third part of said real estate, by deed dated April 18, 1863, conveyed, or attempted to convey, said estate to Amos B. Merrill and William I. Bowditch, from whom the said Cyrus Wakefield derived his title thereto by deeds, none of which contained covenants of warranty, except against the grantors' own acts; and that said John M. Fessenden and Clarence Gordon, as surviving trustees, had no power or authority under said trust indenture, or otherwise, to convey the undivided third part of said estate conveyed to them and John B. Fessenden by said indenture.

2. The second defect alleged was that John B. Fessenden died seised in fee of another undivided third part of said estate, having made his will and a codicil thereto, by which he devised an undivided third part of nearly the whole of said estate to Guy M. Fessenden and Charles T. Child, as trustees, and requested that they " be exonerated and excused from giving any bonds," and gave them full power and authority to sell and convey real estate in fee simple, and also appointed them executors of his will, but gave them no power, as such executors, to sell real estate; that said will was duly proved on August 16, 1862, in the Probate Court for the county of Norfolk, and letters of executorship issued to them on said day; that said executors, although they never obtained any license to sell real estate, charged themselves in an account, filed by them in the Probate Court for said county on November 24, 1866, with the proceeds of the sale of said undivided third part, and credited themselves with a portion thereof as applied to the payment of the bills of the deceased and the charges of administration, and with $10,000, as paid to the trustees under said will, leaving a balance in their hands of $7093.09; that on said November 24, a letter of trusteeship under the will of John B. Fessenden issued to Guy M. Fessenden and Charles T. Child, as trustees thereunder, and on April 2, 1867, they filed an inventory of the property which came to their hands as such trustees, and that said inventory, being the only inventory filed by them as trustees, contained no real estate, but only personal property, amounting at the estimated value to $17,093.99, being about the amount of said $10,000, and of the above-named balance of $7093.09 added together; that Guy M. Fessenden and Charles T. Child, professing to act as trustees under said will of John B. Fessenden, but previously to their being appointed trustees by said Probate Court, namely, on April 18, 1863, conveyed or attempted to convey said other undivided third part of said estate to said Merrill and Bowditch, by the deed above referred to; and that said Cyrus Wakefield, deceased, derived his title to said last mentioned undivided third part from said Merrill and Bowditch, by divers mesne conveyances, none of which contained any covenants of warranty, except against the grantors' own acts.

The case was heard on bill and answer by *Ames*, J., who reserved it for the consideration of the full court.

*C. A. Welch,* for the defendant. 1. After the decease of one of the three trustees under the marriage settlement, the surviving trustees could not sell to the plaintiffs' grantors the undivided third part of the estate. The defendant admits that this is not governed by the rules governing the case of a naked power given to three persons. The exercise of the power of sale was not necessary to the discharge of the trust, and was not one of the powers or duties set forth in the trust. It was purely discretionary, and as it might involve the change of real estate into personal, required in the highest degree the exercise of judgment in those upon whom it was conferred. Being purely discretionary, and not given in terms to the trustees and the survivors and survivor, although the estate was so given, it could not be exercised by the survivors, as the words of the instrument show that it was not so intended. The indenture, after conveying the estate to the three above named persons and the survivors and survivor, and setting forth the trusts upon which they are to hold it, suggests that a sale of the trust estate, or some part of it, may become expedient, and authorizes the said trustees, whenever they shall deem it expedient, to make such sale with the wife's consent; and upon such sale said trustees are authorized to deliver deeds to convey the estate, and upon such sale and conveyance the said trustees shall invest the proceeds. After certain other provisions, giving the said trustees the right to mortgage, &c., the indenture provides that in case of the death, resignation or removal of either of said trustees, a new trustee shall be appointed in one of two ways, and such conveyances shall be made as shall vest the trust estate in him and the surviving and remaining trustees, and the new trustee shall have and exercise all the powers and duties belonging to and imposed on the trustees herein named. Thus this optional power of selling is given to the trustees named; a positive direction is given to appoint a new trustee, if one dies or resigns or is removed, and he is to have all the powers imposed by the instrument upon the trustees named in it, showing that it was not contemplated that surviving trustees should exercise the power of sale. This view is strengthened by the fact that one of the grantees, or trustees named, was the husband himself, who might be the sole surviving trustee, a result incompatible with one of the main objects of the indenture,

that the income should be paid over to the wife, free from his control or interference. See *Gould* v. *Mather*, 104 Mass. 283, 288, 289; *Titley* v. *Wolstenholme*, 7 Beav. 425, 434; *Townsend* v. *Wilson*, 1 B. & Ald. 608. This case must be distinguished from those where the very purpose of the trust is to sell property. *Lane* v. *Debenham*, 11 Hare, 188. *Doe* v. *Godwin*, 1 D. & R. 259. *Jones* v. *Price*, 11 Sim. 557. Nor is the case governed by those where the power itself is given to the trustees and the survivor. *Warburton* v. *Sandys*, 14 Sim. 622. *Hall* v. *Dewes*, Jac 189. *Newman* v. *Warner*, 1 Sim. N. S. 457.

2. The undivided third part, once owned by John B. Fessenden, was not properly conveyed by the trustees under his will. These persons were the executors named in his will. The will was proved, and letters testamentary issued, August 16, 1862. Fessenden and Child, professing to act as trustees, sold the one third to the plaintiffs' grantors on April 18, 1863. On November 24, 1866, they rendered an account as executors, and charged themselves as executors with the proceeds of this sale, credited themselves as executors with a large portion of the proceeds as applied to the payment of debts and charges of administration, and with a certain portion, $10,000, as paid over to the trustees, leaving a balance in their hands as executors of $7,093.09. On the same day, letters of trusteeship issued to them, and subsequently they filed an inventory as trustees, in which they charged themselves, not with any real estate, but with personal property, $17,093.99, equal in amount within ninety cents to the amount charged in their account as executors, as paid to the trustees, added to the balance of their executors' account. Thus, while by the deed they professed to sell this interest in real estate as trustees, they did not accept the trust and were not appointed trustees till three years afterwards, and in all their probate proceedings they treated the sale as made by, and its proceeds as belonging to, the executors. The irregularity and inconsistency of these proceedings are so great as to throw a cloud upon the title, and prevent any prudent purchaser from taking it. The court will, therefore, not compel the defendant, in a suit for specific performance, to accept it. *Richmond* v. *Gray*, 3 Allen, 25, 27.

*W. G. Russell*, for the plaintiffs.

WELLS, J.   We are of opinion that the power of sale, given by Frances G. Fessenden, as contained in the indenture of settlement, was rightfully exercised by the two surviving trustees.

First.  It was appendant to the legal estate, which vested in the trustees in strict joint tenancy.  Hill on Trustees, 471, 473.

Second.  It was given to the trustees as an incident of the trust and a means for its administration according to the purpose of the settler.  *Richardson* v. *Morey*, 18 Pick. 181, 187.  *Gibbs* v. *Marsh*, 2 Met. 243.  *Warden* v. *Richards*, 11 Gray, 277. *Treadwell* v. *Cordis*, 5 Gray, 341.

Third.  It was conferred upon them as trustees, and not personally, *nominatim.* 1 Sugd. Powers, (7th ed.) 146.   *Chandler* v. *Rider*, 102 Mass. 268.   *Gould* v. *Mather*, 104 Mass. 283.

The expression " said trustees " is sometimes regarded as having a restrictive significance.  It is true it relates back to the clause in which three persons are named ; but they are named only as grantees of an estate expressly limited to them and their assigns, " and to the survivors and survivor of them, his heirs and assigns."

That the power is annexed to the office, and not to the persons, is manifest also from the subsequent clause which provides for supplying vacancies, and confers the same powers upon the substituted trustees.   Indeed the only difficulty comes from this direction ; to wit, from the question whether the power of sale is not suspended until the vacancy shall have been filled.

Upon careful consideration of the whole indenture we are satisfied that no such suspension of this power was intended.   The subsequent clause does indeed provide for the continuation of the trust by succession ; and to that extent enables the limitations of the preceding clauses to be defeated or modified.   But this could only be done, during the life of the settler, by the settler herself, and after her decease, by the remaining trustees.   Until this right should be exercised, the whole title, with all its incidents, remained with the original trustees or their survivors.   This clause itself requires a conveyance from them in order to invest the new trustee with the powers and duties belonging to the trust.   There is nothing in the instrument to indicate an intent that any of the powers or duties confided to the trustees should not, in the mean time, be executed by those upon whom they

would be cast; nor is there anything in the nature of the case to show that it would be inconsistent with any purpose for which the trust was created. The power of sale might not be necessary to the maintenance and proper administration of the trust. But its exercise does not depend upon necessity. It is conferred in terms which may make its exercise a duty, and which charge the duty upon the trustees named, and their survivors or survivor, unless they are relieved thereof by force of the subsequent provision.

The suggestion that the settler may have desired to secure the judgment of three independent individuals upon the expediency of a sale has but little weight in this case, because she provided that no sale should be made during her life without her own consent, " testified by her joining in such conveyance ; " and after her decease the appointment of any one to fill a vacancy was confided exclusively to the control of the remaining trustees.

We are also of opinion that the power of sale, contained in the will of John B. Fessenden, was rightfully exercised by the trustees, to whom one undivided third of this estate was devised with full power and authority to sell and convey. The only question raised in regard to it is whether the trustees could legally execute the power without first receiving an appointment or letter of trust from the Probate Court. The authority of the Probate Court cannot add to or aid a power given by will, and is not necessary to its exercise. It cannot prevent or promote the transmission and vesting of the title of estates devised in trust, in those who are named trustees in the will. The statutes require that every trustee, not exempted therefrom, " shall, before entering on the duties of his trust, give bond " to the judge of the Probate Court. Gen. Sts. c. 100, § 1. But these trustees were exempt by reason of the request of the testator that they be " exonerated and excused " from giving bonds. Gen. Sts. c. 100, § 2. When trustees are required to give bond, as all trustees under a will are now, St. 1873, c. 122, it is proper that they should obtain a letter of trust to certify their compliance with the requisitions of law in that behalf. But their authority to exercise the power and convey the estate is derived exclusively from the will. *Tainter* v. *Clark*, 13 Met. 220, 227. *National Webster Bank* v. *Eldridge*, 115 Mass. 424.

Upon neither of the grounds of objection to the title, offered to be conveyed, do we regard it as so far subject to doubt of its validity as to justify the defendant in rejecting, or the court in declining to require him to accept, the conveyance.

*Decree for the plaintiffs.*