GEORGE WHITE, Judge of Probate, *vs.* OLIVER DITSON & another.

Norfolk.    March 3. — Nov. 28, 1885.    W. ALLEN, HOLMES, & GARDNER, JJ., absent.

A testator, by his will, of which H. was appointed executor, gave the residue of his estate to H., "to be disposed of by him for such charitable purposes as he shall think proper." H. paid all the debts, legacies, and funeral expenses of the testator, but rendered no final account, as executor, to the Probate Court, and gave no bond as trustee. *Held,* that the residuary estate was given to H. in trust; and that the sureties on his bond as executor were liable for so much of such estate as was received by him, and not disposed of for "charitable purposes."

Under the condition of an executor's bond, "to administer, according to law and the will of the testator, all his goods, chattels, rights, and credits, and the proceeds of all his real estate that may be sold for the payment of his debts and legacies, which shall come to the possession of said executor, or of any other person for him," the sureties on the bond are not liable for the proceeds of real estate sold by the executor by authority of the will, and not needed for the payment of expenses, debts, or specific legacies.

In an action against the sureties upon the bond of an executor, to whom the residuary clause of the will gave a fund to be disposed of by him for charitable purposes, a book, purporting to be an account of such fund, supplemented by the receipts of the respective societies to whom funds were given, and showing a payment of a certain sum to such societies, is admissible in evidence; but entries in a "family expense book," including items as payments to charities, for taxes, and personal gifts, are not admissible.

In an action against the sureties upon the bond of an executor, to whom the residuary clause of the will gave a fund to be disposed of by him for charitable purposes, there is no presumption that the residue unaccounted for by him was paid out in accordance with the terms of the trust; but the burden of proof is upon the sureties to establish that fact.

In an action against the sureties upon the bond of an executor, to whom the residuary clause of the will gave a fund to be disposed of by him for charitable

purposes, if there is no wilful breach of duty by the executor, simple interest at six per cent should be computed upon the residue unaccounted for, from the date when this duty should have been performed to the rendition of judgment, and added to the principal sum, from which should be deducted his commission.

DEVENS, J. The defendants, who are the sureties on the bond of the late John P. Healy, as executor of the will of John Percival, having admitted a breach thereof, the case at bar has been referred to an assessor to report the facts, and is now before us upon a reservation of the questions of law raised upon the facts stated in his report, and in the subsequent agreement of additional facts by the parties.

It is not denied that Healy, as executor, paid all the debts, specific legacies, and funeral expenses of the testator. The first and most important inquiry is as to the responsibility of the sureties for that which came into his hands under the residuary clause of the will.

This is in the words following: " All the rest and residue of my property and estate, real, personal, and mixed, of which I shall die seised, or to which I may be entitled at the time of my decease, I give, devise, and bequeath to the said John P. Healy, to be disposed of by him for such charitable purposes as he shall think proper."

This clause is preceded by one which gave to Healy a sword and a portrait of the testator, to be disposed of " in such way and manner" as he might think "fit and proper." The earlier clause differs from that we are considering in the important respect that no restraint is placed upon the disposition Healy might make of the articles therein bequeathed, while the property bequeathed by the latter clause is " to be disposed of " by him for "charitable purposes," although the selection of the objects of the charity which should receive the bounty was left to Healy.

The word "charitable" has a distinct legal meaning, derived from the St. of 43 Eliz. *c.* 4, from the construction given to it in the definition of its objects of charity, and from the application of the statute to other uses which are not included in those there enumerated, but which come within its spirit by analogy. While the gift to Healy is not, in terms, in trust, the object for which it is confided to the donee distinctly appears

to be its distribution to charitable purposes. For this only it is entrusted to him. He took the gift for no purpose personal to himself, nor in any manner for his own use, and had no beneficial interest therein. It is not material, therefore, that the words " in trust " are not found in the terms of the bequest. *Nichols* v. *Allen,* 130 Mass. 211. *Schouler, petitioner,* 134 Mass. 426.

While a bequest which could be applied to purposes other than charitable might be held too indefinite to be carried out, the limitation of its distribution to purposes well defined and deemed worthy of particular protection, even if various, would enable the court, were the fund still in the hands of the trustee, to compel him to execute this clause of the will by the selection of the charitable purposes to which the fund should be devoted. The testator has shown his intention to dispose of this gift for charitable purposes generally, and a confidence has been reposed in the trustee to make a selection of the objects of charity. If therefore the trustee proceeds in good faith, and with reasonable diligence, to divide and distribute such a legacy for purposes which could properly be called charitable, either by directly applying it to objects thereof, or transferring it to responsible societies or associations formed for such purposes, a court of chancery would not interfere with the exercise of his discretion. Should he refuse to do this, there would be no serious difficulty in compelling, by the proper agencies of such a court, the execution of the trust, and in preventing the fund from being misappropriated to selfish uses. *Saltonstall* v. *Sanders*, 11 Allen, 446. *Loring* v. *Marsh*, 2 Cliff. 469 ; 6 Wall. 337. *Marsh* v. *Renton*, 99 Mass. 132. *Attorney General* v. *Gleg*, 1 Atk. 356.

Whether the power to select charitable objects was strictly limited to Healy, on account of the personal confidence reposed in him, so that, if he had declined to accept the trust, or if he had deceased without completing the execution of it, it could not be executed by the intervention of the court, and, the trust thus failing, the fund should go to the next of kin, — or whether, the testator having distinctly shown his intention that it should be devoted to charitable purposes generally, it should be held that the power of selection was attached to the trust, so that it might be executed through a trustee, who should carry

into effect the controlling purpose of the testator under the supervision of this court, — is a question not necessary now to be discussed. *Loring* v. *Marsh, ubi supra.* *Fontain* v. *Ravenel,* 17 How. 369.

The first inquiry is as to the liability of the sureties. While Healy fully completed the administration of the estate by the payment of all debts, legacies, and expenses, he settled no final account as executor, and did not, by any open and notorious act, discharge himself as such in the Probate Court by assuming to transfer the residue of the property to himself as trustee, or by any other act indicating an intention thereafter to hold the same for the purposes of the trust. The will gave to him two characters, those of executor and trustee; and the duties of the latter character were entirely distinct from and independent of those of the former. As actual payment cannot be made by one to himself, it has been held that, where the same person is executor and trustee, he must give bond in his character of trustee before he can exonerate himself from his liability as executor. *Hall* v. *Cushing,* 9 Pick. 395. *Dorr* v. *Wainwright,* 13 Pick. 328. *Newcomb* v. *Williams,* 9 Met. 525, 534. *Conkey* v. *Dickinson,* 13 Met. 51. *Daggett* v. *White,* 128 Mass. 398. Gen. Sts. *c.* 100, § 14. While it is not controverted by the defendants, that, if a case were presented where the trustee was legally compelled to give bonds, it would be necessary to show, by compliance with this requirement, that a transfer of the property was made by the executor, their principal contention is, that such is not the case at bar ; and that, if it can be shown that Healy had fully completed his duties as executor, it must be held that the residue of the property was lawfully retained by him as trustee. This question will be of less interest hereafter, as, by the St. of 1873, *c.* 122, (Pub. Sts. *c.* 141, § 16,) every trustee is required to give at least his own personal bond, which certainly contemplates that, where the same person is executor and trustee, there shall be a distinct transfer of property to him in the latter capacity by authority of the Probate Court. *Parker* v. *Sears,* 117 Mass. 513. Even if this were a case where the trustee might be, and was by the will, exempted from giving bond, we should not be prepared to say that the facts that Healy ceased at a certain time to do any acts as executor, — all that was necessary in that

capacity being then completed, — and thereafter did certain acts showing an intention to execute the trust, were alone sufficient, without any settlement of his account as executor in the Probate Court, to exonerate him and the sureties on his bond as executor.   There should, in that case, be some public act, which could only take place in that court, indicating a discharge of himself in one capacity, and the acceptance of the trust imposed upon him in the other, before this transfer could take place.   *Newcomb* v. *Williams*, *ubi supra*.   This might perhaps be by any definite act assented to by that court, as where an executor, who had been appointed trustee, and had also qualified as such, charged himself in his account as executor with money paid to himself as trustee, which account had been allowed.   *Crocker* v. *Dillon*, 133 Mass. 91.

In *Taylor* v. *Deblois*, 4 Mason, 131, cited by the defendants, an administratrix, after a decree of the Probate Court ascertaining the distributive shares of the intestate estate, took the guardianship of one of the persons entitled to a share, who was a minor; it was held, that, by operation of law, she held the amount by way of retainer as guardian, and not as administratrix, and that no suit lay against her sureties upon the administration bond for the amount due her ward.   But in that case, by a process in Rhode Island known as *quietus*, an administrator might be fully discharged by the Probate Court.   This *quietus*, which was a decree rendered by that court, stated, in substance, that the administratrix had fully administered the estate, and ordered that " she be, and hereby is, from henceforth acquitted and discharged of the same."   Before this *quietus*, she had signed a certificate to the Probate Court, which had been recognized by it, that she had in " her possession and control," as guardian, the shares of the minor whose property was afterwards wasted.

*State* v. *Hearst*, 12 Mo. 365, *Coleman* v. *Smith*, 14 S. Car. 511, and *Carroll* v. *Bosley*, 6 Yerg. 220, also relied on by the defendants, are all cases where the question of responsibility arose between the sureties on the bond of the principal defendant as administrator and the sureties on his bond as guardian.   In these it was held that, when the time for the settlement of the estate as administrator had fully expired, and the distributive shares of the minors had been ascertained, it must be deemed that

thereafter the funds were held by the principal defendant as guardian, as that was the capacity in which he had the right then to hold; and that the property was thus, by operation of law, vested in him as guardian. But we are referred to no case where the same person was administrator and guardian, and had failed to qualify in the latter capacity, in which it has been held that the sureties on his bond as administrator were discharged. The ground upon which the transfer of the property is presumed to take place, namely, that one should be deemed to hold in that capacity in which he ought to hold, has no existence where the principal has not qualified as guardian.

The will by which Healy was appointed a trustee for the distribution of the residue of the estate for "charitable purposes" did not exempt him from giving a bond; but the defendants contend that Healy was, from the character of the trust, so situated that he could not properly have been required to give bond; and that therefore, as it is shown by a variety of facts that after 1865 he held the property as trustee, he must be deemed to have discharged his sureties on his bond as executor. If it were true that he was entitled to enter upon his duties as trustee without giving bond for their faithful performance, there would be force in this position, especially if, the debts and legacies having been paid, the residue had been ascertained by a proper decree of the Probate Court settling his account. But no such decree was ever made, nor was the trustee entitled to enter on his duties without giving bond.

The defendants upon this point rely on the case of *Lowell, appellant,* 22 Pick. 215, which is followed in *Drury* v. *Natick,* 10 Allen, 169. It is decided in *Lowell, appellant,* that, where property is given to trustees for the purpose of a general charity, such as the gift there in question, which was for the promotion of education and the advancement of science by a permanent institution, and where the testator had provided for the perpetuation of the trusts, and for a continuous succession of trustees, without reference to the probate law, and where he also had appointed perpetual visitors of his charity, it was not a gift in trust for any person or persons within the true intent and meaning of the statute; and that in such case the trustee was not required by law to give bond before entering upon the duties of his trust.

The distinction between this case and that at bar is obvious. There is here no public charity, indefinite in duration, to be permanently established, where a perpetual succession of trustees is to take, hold, and administer the property, provision being made for the rendering and auditing of its accounts, and for the supervision of a permanent board of visitors. The administration of a sum of money bestowed under such circumstances, and for such a purpose, may well be deemed to be beyond the control of the Probate Court. That which is here bequeathed is a sum of money to be distributed by a trustee for charitable purposes, which consists of the residue of an estate. No institution of public charity is to be founded, although the trustee may undoubtedly transfer the sum bequeathed to institutions formed for that purpose, and no fund is to be permanently held. Within such reasonable time as shall enable the trustee to make proper inquiry, in order to ascertain what individuals or societies coming within the terms of the trust may, in the just exercise of his discretion as trustee, be made the immediate recipients of the testator's bounty, the fund is to be distributed. The ground upon which it was held in *Lowell, appellant, ubi supra,* that the provisions of the Rev. Sts. *c.* 69, § 1, and in *Drury* v. *Natick, ubi supra,* that the provisions of the Gen. Sts. *c.* 100, § 1, requiring a bond to be given in all cases by testamentary trustees, except where there was a special exemption by will, or where all persons interested consented that it should not be required, had no application to a public charity established in a perpetual succession of trustees, cannot be so extended as to exempt individuals charged with the distribution of sums of money " for charitable purposes" from giving bond to perform their trust.

It is suggested, that, in the latter case, those who are to receive the benefit of this sum are entirely indefinite; that the only provision for putting in suit such a trustee's bond is " for the use and benefit of any person interested in the trust estate;" Gen. Sts. *c.* 100, § 12; Pub. Sts. *c.* 143, § 18; that no person or institution could thus describe itself; and, therefore, that it cannot have been intended that any such bond should have been given. We cannot assent to this. All persons who are themselves objects of charity within the legal meaning of the term, and any institutions founded for charitable purposes, might

become interested. If the court should be compelled to select another trustee, in order to carry out the purpose of the testator, each of those who might become entitled by this selection, as made under the direction of the court, would be interested in the bond given by the original trustee, and might be empowered to bring suit thereon. Gen. Sts. c. 100, § 12. After the decease of the original trustee, if any of the trust fund remained undisposed of, whether it were held that the power of selection was attached to the trust so that it could still be executed, or that it was personal so that the residue undisposed of would go to the next of kin, there would in either event be persons directly interested in the trust estate.

We are therefore of opinion that the sureties on the executor's bond of Healy are liable for the residue of the personal property received by him, and not disposed of for " charitable purposes."

In considering to what extent they are liable, it is necessary to determine whether they are responsible for the proceeds of the real estate sold by Healy. The will not only authorized, but directed, him to convert the whole real estate of the testator into money, as soon after the testator's decease as it should seem expedient, and provided that any deed executed by him should convey as perfect a title as if made by the testator. He was authorized to sell at public or private sale, and did so by authority of the will, and not of the Probate Court, within a reasonable time after the death of the testator, receiving therefor the sum of $4700. This sum was not needed for the payment of expenses, debts, or any specific legacies.

The condition of the bond, according to the statutes in force when it was executed, was in its second clause, which is the only one necessary to be considered : " to administer according to law and the will of the testator all his goods, chattels, rights, and credits, and the proceeds of all his real estate that may be sold for the payment of his debts and legacies, which shall come to the possession of said executor, or of any other person for him."

By the St. of 1880, c. 152, (Pub. Sts. c. 129, § 5,) the condition of a bond given under such circumstances was altered by striking out the words " for the payment of his debts and legacies," and inserting the words " or mortgaged." The same statute of 1880 provided that, where license or authority was given

to an executor, &c. to sell real estate, no special bond to account for the proceeds need be given, unless the bond given on his appointment was insufficient. Of course the liability of the defendants is to be determined by the law as it existed when the bond into which they entered was made, and by its terms. The clause, " proceeds of his real estate that may be sold for the payment of his debts and legacies," cannot cover a responsibility for a sale which was not necessary for the payment of debts or any definite legacy. Such proceeds would form a part of the residuum of the estate ; but, as remarked by Chief Justice Shaw, "in common parlance, as well as in a more precise use of language, a 'legacy' is distinguishable from the gift of a residue, or share in a residue." *Quincy* v. *Rogers*, 9 Cush. 291, 297. Had the executor applied to the Probate Court for leave to sell real estate for the payment of legacies, assuming that there was no provision in the will in relation to the subject, it could not have been granted, if there was no existing unpaid legacy, but only a gift of the residuum. The only legacies for the payment of which the real estate could be sold, by authority of the Probate Court, were such as were definite, and that which was received from such a sale was the only money for which the sureties on the bond would be responsible. *Robinson* v. *Millard*, 133 Mass. 236.

It has been held in *Alley* v. *Lawrence*, 12 Gray, 373, that a devise to executors in trust for the support of the testator's children, with power to sell and convey any portion of the land, gives them a right to sell and convey in their own names without giving other bonds than as executors. It was not necessary there to consider what was the responsibility of the sureties for the money received from such a sale. Whether a power to sell given by will was to be treated as a personal trust and confidence only in executors named, so that it could only be executed by them, or whether, as prescribing the mode of administration of an estate, it would pass to survivors, or to an administrator with the will annexed, has also been a question several times discussed in our decisions. *Warden* v. *Richards*, 11 Gray, 277. *Greenough* v. *Welles*, 10 Cush. 571. *Chandler* v. *Rider*, 102 Mass. 268. *Tainter* v. *Clark*, 13 Met. 220. Even if an executor invested with a power to sell real estate, either as a matter

of personal trust and confidence in him, or as a mode of administering the estate prescribed by the testator which might be exercised by any successor, might make a good title to real estate, it by no means follows that the sureties on his bond would be responsible for the proceeds of such real estate, in view of the limited character of that instrument. The power to sell real estate, independently of that which may be given by the Probate Court for the payment of debts and legacies, is a trust power differing from that which properly belongs to the executor or administrator. It may be that the probate of the will fully invests him with this power, and that, even if he should properly give bond, he may convey a good title without doing so, and yet that the sureties on the original bond would not be responsible. All that the sureties have agreed to be responsible for, so far as the real estate is concerned, are " the proceeds of his real estate that may be sold for the payment of his debts and legacies.". This is a definite obligation, and contemplates a sale of the real estate strictly for these purposes by authority of the Probate Court, as, without this authority, the executor or administrator, as such, can have no power to sell. To construe it as binding the sureties to be responsible for a sale of real estate made for no such purposes, but by authority of a trust power given in the will, is to extend their obligation much too far. There is certainly no expression in the bond which covers a responsibility for real estate sold under the authority of the will.

We understand that the argument by which this responsibility is deemed to exist is, that, the real estate having been lawfully turned into money under the power of the will, the proceeds became of " the goods, chattels, rights, and credits " of the estate, for the faithful administration of which the sureties were bound. If this argument were tenable, it would follow that, when real estate was ordered to be sold to a greater amount in value than was necessary for the payment of debts and legacies, which the Probate Court is authorized to do when land cannot be divided, the sureties on an administration bond in the form here used would be responsible for the surplus. Yet this is certainly not the case. An additional bond has always in such case been taken for the protection of this surplus, for the reason that the

sureties in the original bond have been held not responsible for it, until the recent change in the administration bond. *Bennett v. Overing,* 16 Gray, 267. *Robinson v. Millard, ubi supra.*

There has been on this subject, it must be conceded, a conflict of authority in the decisions of the several States, not reconcilable by reason of the differences which exist in the form of the bonds considered in the several cases. They were all examined with great care in *Probate Court v. Hazard,* 13 R. I. 3. It was there held that, in a suit on an administrator's bond conditioned to administer all the "goods, chattels, rights, and credits" of the deceased, the sureties were not liable for proceeds of real estate sold by the executor under a power in the will. The words "the proceeds of real estate sold for the payment of debts and legacies" are not found in the Rhode Island bond, but how strictly these have been limited in Massachusetts is shown by the cases already cited. Even if the real estate has been changed into money by virtue of a power in the will, it is not, in our view, that personal property for the administration of which the sureties became responsible. The direction of the will that his real estate should be turned into money did not make it "his goods, chattels, rights, and credits," for the administration of which, in addition to "the proceeds of all his real estate sold for the payment of debts and legacies," the sureties became responsible.

In ascertaining the amount for which the sureties are to be held liable, it is important to determine whether any weight should be given to the books kept by Healy, and the evidence by which it was sought to supplement them. That the book which professed to be "the account of the fund left by the will of John Percival to John P. Healy to be used by him for charitable purposes," supplemented by the receipts of the respective societies to whom funds were given, and which shows an expenditure of $1100 to three charitable societies, although objected to by the plaintiff, was properly admitted, cannot fairly be questioned. Even if, as executor, Healy failed to settle his account, as it is found that there are no debts and legacies to be paid, if he distinctly devoted, as trustee, the funds left by Percival to charitable purposes, to the extent to which they were thus devoted the damages would be reduced. That these three gifts

were thus set aside from the Percival fund is found by the auditor, and the facts fully justify the finding.

The only evidence to show that Healy made other payments from the Percival fund is derived from the entries in certain family expense books, commencing in 1863, and including items as payments to charities, taxes, personal gifts, &c. By comparison of the amounts expended by Healy during the time covered by these books, and in former years, the defendants seek to establish the proposition that certain sums were expended from the Percival fund in discharge of his obligation to expend it in charity. Unless these family expense books were admissible in favor of the sureties to show the fact of payments from this fund, we have no occasion to consider the weight and the sufficiency of the evidence afforded by them. If properly rejected by the assessor, there was no evidence before him which would have justified a finding in favor of the sureties as to the sums claimed by them to be thus shown to have been expended. The statements in these books were not even entries made in a book of accounts for the purpose of charging those to whom they were made. They are mere declarations that certain sums were paid by Healy in charity; the payments do not purport to have been made on account of the Percival fund. Such declarations cannot afford legal evidence of payments by Healy in charity, far less of payments from the Percival fund, and were properly rejected by the assessor. Nor was the assessor bound, as contended by the defendants, to render judgment in their favor upon the presumption that the residue in Healy's hands was paid out in accordance with the terms of the trust. Upon this point, the burden of proof was on the defendants. *Choate* v. *Arrington*, 116 Mass. 552.

There remain the questions of interest upon the sums for which the sureties are liable, and of any charges or commissions which may properly be deducted. When there is a wilful breach of duty, interest may be allowed, with annual rests. *Jennison* v. *Hapgood*, 10 Pick. 77, 104. Ordinarily, when a trustee fails to pay over or to distribute money, he should at least be charged simple interest thereon. The question of compensation is also one within the discretion of the court to a large extent, and it may be wholly disallowed. *Brooks* v. *Jackson*, 125 Mass. 307.

In view of all the circumstances of the case, no wilful breach of duty is shown; it may have been that Mr. Healy wrongly thought, indeed, that no legal duty was imposed on him, but an obligation binding on his own conscience only. There has certainly been a failure to pay over the money when it should have been done. Admitting that the trustee was entitled to a certain length of time for the selection of the proper objects of charity, no reason appears why an ample opportunity had not been afforded when he made, on February 25, 1867, the donation to the Ladies' Home Educational Society. The last act done by him strictly as executor was on November 25, 1865, and the whole estate had been converted into personal property a considerable time previously. Upon the balance then due, deducting the sum of $4700, the price of the real estate, simple interest at six per cent should be computed from February 25, 1867, to the rendition of the judgment, and added to the principal sum. From this should be deducted Healy's commission of two and one half per cent, as computed by the master, and the amount left in his hands.                                *Ordered accordingly.*

*E. M. Johnson*, for the plaintiff.

*W. G. Russell & J. Fox*, for the defendants.