ONA L. BRACKETT, executrix, vs. EMILY A. FULLER & another.

Middlesex.     February 4, 1932. — April 4, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Executor and Administrator*, Special administrator. *Will*, Witness. *Attorney at Law.*

The delivery, required by the condition of the bond of a special administrator, of funds of the deceased, held by him pending the termination of a contest respecting an alleged will, to an executor appointed upon allowance of the will, where he is the one appointed such executor, must be something more than merely his decision to transfer title accompanied by a change, made upon his order, in the name in which the account is carried at a bank; such transfer to be effective must be accomplished by some notorious and authoritative act which ordinarily would require the approval of the Probate Court in some form.

While, upon the granting of letters testamentary and the appointment as executor of one who, pending a determination of a contest, had been appointed and was acting as special administrator, his powers as special administrator came to an end, he continued in that capacity to be the responsible holder of the title to property of the deceased in his possession until he made a delivery to himself as executor by some notorious and authoritative act which ordinarily would require the approval of the Probate Court in some form, and until a delivery of such a character he as special administrator and the surety on his bond as special administrator continued to be liable for any misappropriation thereof.

The requirement of G. L. c. 193, § 16, respecting delivery of property of a deceased person's estate by a special administrator thereof to an executor or administrator or other authorized person must be construed to mean, in case the delivery is to himself in another fiduciary capacity, as soon as that can be done so as to make a legal and effective delivery in accordance with the requirements of the law in such a case.

If, after the allowance of a will and the appointment as executor without sureties on his bond of one who, pending a contest, had been acting as special administrator, such person changes a bank account which he had as special administrator to himself as executor and thereafter, before the allowance of his final account as special administrator, misappropriates funds in such account, he should be charged for such funds as special administrator, no effective transfer having been made to himself as executor.

Approval by a probate court under G. L. c. 193, § 14, without notice to parties interested, of payments of certain expenses and for services rendered by a special administrator did not preclude such parties from objecting to such payments upon the hearing of an account of the special administrator containing items respecting such payments.

There is no statute in this Commonwealth prohibiting an attesting witness to a will from acting as attorney for any party interested in sustaining the will, and no principle of the common law which would preclude an attorney from rendering such services where the formal execution of the will is not in dispute and such attorney is not called upon to testify.

It was proper for a judge of probate to refuse to allow, in an account by a special administrator, a charge for his services as such, where it appeared that he had misappropriated a substantial portion of the estate in his charge.

PETITION, filed in the Probate Court for the county of Middlesex on September 9, 1930, for the allowance of the first and final account of J. Albert Brackett, Esquire, as special administrator of the estate of Charles S. Harris.

The petition was presented in the Probate Court to *Leggat*, J., upon an agreed statement of facts. Material facts are stated in the opinion. The judge reserved and reported the case for determination by this court.

The case was submitted on briefs.

*W. J. Day*, for the petitioner.

*H. W. Conant*, for Fidelity and Deposit Company of Maryland.

*J. J. Enright*, for the respondents.

SANDERSON, J. On September 9, 1930, the executrix of the will of J. Albert Brackett filed in the Probate Court an account purporting to be the first and final account of her testator as the special administrator of the estate of Charles S. Harris and purporting to cover the period from March 21, 1927, to May 3, 1928. Pursuant to G. L. c. 215, § 13, the judge of probate reserved and reported the case and all questions of law for the consideration and determination of the Supreme Judicial Court, upon an agreed statement of facts and requests for rulings of law. The parties agreed for the purpose of determining the questions of law involved, and without prejudice to the rights of the contestants and the accountant and the surety to contest

the amounts due and to assert any proper set-offs or counterclaims if the questions of law are decided adversely to the accountant, that in June, July, August, September and October after his appointment as executor Mr. Brackett, by checks signed "J. Albert Brackett, Executor, Estate of Charles S. Harris," made withdrawals from the account of the Harris estate in the Old Colony Trust Company and improperly applied the proceeds as withdrawn; that "If, upon all the facts, the said Brackett is chargeable with these withdrawals as special administrator, the case is to be remanded to the Probate Court for a determination of the amount of these improper withdrawals and amount of any set-offs or counterclaims to same."

Harris died testate January 19, 1927, bequeathing all of his estate to Emily A. Fuller, one of the respondents, and nominated J. Albert Brackett to be executor without giving sureties on his official bond. The allowance of the will was contested and the order of the probate judge denying issues for a jury was affirmed by this court in *Brackett* v. *Harris*, 263 Mass. 334. On March 22, 1927, Mr. Brackett was appointed special administrator and qualified by giving bond with the respondent Fidelity and Deposit Company of Maryland as surety. Guy E. Healey, a witness to the will, was engaged by Mr. Brackett to act as counsel for the estate soon after Harris died, and acted as counsel in the will contest and in other matters connected with the estate. On July 22, 1927, the special administrator filed an inventory showing that substantially all the property in the estate consisted of liberty loan bonds with overdue coupons, a deposit in the Atlantic National Bank savings department, and a sum in cash. On April 16, 1928, the special administrator filed a petition for leave to pay specified claims against the estate, among which was one of Mr. Healey for legal services in the sum of $750, and another, his own claim, for services as special administrator in the sum of $250. This petition was approved by the court on the day it was filed without notice to any one. The claims thus authorized to be paid appear as items 1–13, inclusive, in schedule B of the account of the special admin-

istrator. It appeared that all the payments thus approved by the judge of probate were made either before or after the date of approval. On May 3, 1928, the will was allowed and Mr. Brackett was appointed executor, giving bond without sureties. On January 3, 1930, he died. On April 28, 1930, John J. Enright was appointed administrator *de bonis non* with the will annexed of the estate of Harris.

The special administrator's first and final account was signed and sworn to by him on May 4, 1928, but not filed until September 9, 1930, about eight months after his death. The only items in dispute in this account are those numbered 12 to 16, inclusive, as follows:

"12. . . . [April 17, 1928] Guy E. Healey        Legal Services        750.00
13.            "        "   J. Albert Brackett     Services as
                                                   special admr.       250.00

        May 3  Turned over to J. Albert Brackett
               Executor of Will of Charles S. Harris:

14.     "  "   Amount on deposit at Old Colony Trust Co.        $1669.71
15.     "  "       "     "    "     " Atlantic National
                                      Bank, Savings Dept.         7782.74
16.     "  "   U. S. Liberty Bonds                               1500.00"

On May 10, 1928, Mr. Brackett or some one in his behalf exhibited a certificate of his appointment at the Old Colony Trust Company and the account was then changed from "Estate of Charles S. Harris, J. Albert Brackett, special administrator," to "estate of Charles S. Harris, J. Albert Brackett, executor." It was agreed that at that time there was no physical transfer of the assets by the bank from the old account into a new account of the executor. On June 29, 1928, Mr. Brackett filed in the Probate Court a paper purporting to be the executor's inventory of the estate of Harris. This inventory contained the same list of liberty bonds which appeared in the inventory of the special administrator. It also included a deposit in the Atlantic National Bank savings department, and a deposit in the Old Colony Trust Company.

On April 11, 1928, the special administrator had sold all of these United States liberty bonds belonging to the estate and deposited their proceeds in the joint account of him-

self and wife and never accounted therefor. It is conceded that item 16, representing these bonds as part of the estate turned over by the special administrator to himself as executor, should be disallowed and the special administrator charged with the amount of their proceeds.

On May 7, 1928, before the title to the account in the Old Colony Trust Company had been changed, Mr. Brackett drew a check on that company payable to the order of the Old Colony Trust Company for $2,000, signing his name as special administrator. This check was given to the Old Colony Trust Company in payment of a cashier's check issued by it to him in a like sum which was indorsed by him and his wife and deposited in their joint account in the same trust company, and they received the proceeds thereof. The check made payable to the Old Colony Trust Company by Mr. Brackett was charged by the bank to the account of the Harris estate, standing in the name of J. Albert Brackett, special administrator, and the amount of this check was never repaid to the estate.

On May 3, 1928, the balance in the savings department of the Atlantic National Bank was $5,882.74, as shown by the savings deposit book standing in the name of the estate of Charles S. Harris, J. Albert Brackett, special administrator. This account and the savings bank book which represented it and the records of the account in the bank continued to stand in the name of J. Albert Brackett, special administrator, from the time the account was opened until it was closed on December 1, 1928. The parties agreed that there is no record to indicate that Mr. Brackett's letter of appointment as executor was shown to this bank, but that it may have been so shown.

After his appointment as executor Mr. Brackett withdrew at various times all the money in the savings department of the Atlantic National Bank giving receipts therefor signed in his name, "Executor Estate of Charles S. Harris." The proceeds of these withdrawals were credited to the account of Mr. Brackett, executor, at the Old Colony Trust Company after he had deposited the same in that bank. On May 18, 1930, the administrator *de bonis non*

with the will annexed of the estate of Harris filed a petition
to compel Ona L. Brackett, executrix of the will of Mr.
Brackett, to render an account of his administration of
the estate of Harris. The account filed by her shows in
schedule A personal property of the value stated in the
executor's inventory, in schedule B a statement that she
had no knowledge of the management of the estate and
was unable to furnish an account of the same, and sched-
ule C shows no personal property in the possession of the
accountant.

The question presented in connection with items 14 and
15 of the special administrator's account is whether mis-
appropriations made after Mr. Brackett's appointment as
executor are chargeable to him in his capacity as special
administrator.

G. L. c. 193, § 16, provides, in part: "Upon the granting
of letters testamentary or of administration, the powers of
the special administrator shall cease. Upon the termina-
tion of his powers, the special administrator shall forthwith
deliver to the executor or administrator or to such person
as is otherwise lawfully authorized to receive it all the
estate of the deceased in his hands." The conditions re-
quired to be incorporated in the bond of a special adminis-
trator are, in part, "that he will, whenever required by the
probate court, truly account on oath for all the property
of the deceased which may be received by him as such
special administrator, and will deliver the same to any
person who may be appointed executor or administrator of
the deceased, or may be otherwise lawfully authorized to
receive the same." G. L. c. 205, § 1, cl. 3. The delivery of
property required by the bond, when a person holding it
in one trust capacity must show that he has received it
in another, requires something more than his decision to
transfer title accompanied by a change, made upon his
order, in the name in which the account is carried at a
bank. In *Hall* v. *Cushing*, 9 Pick. 395, 409, *Dorr* v. *Wain-
wright*, 13 Pick. 328, *Conkey* v. *Dickinson*, 13 Met. 51, 54,
*Hardy* v. *Yarmouth*, 6 Allen, 277, 281, *Daggett* v. *White*,
128 Mass. 398, *White* v. *Ditson*, 140 Mass. 351, 354, *Welch*

*v. Boston,* 211 Mass. 178, 181, and *Williams* v. *Acton,* 219 Mass. 520, 524, the court has considered the prerequisites to a valid transfer of property from an executor to himself as trustee or guardian. In all these cases it was held that there can be no transmutation of property from one in one fiduciary capacity to himself in another unless there be some authoritative and notorious act, such as the approval by the Probate Court of an account.

The accountant contends that this rule is grounded on the statutory duties of an executor, and does not apply to a special administrator. But in none of the cases is it intimated that the requirement rests on the statutory duties of an executor.

In *Lanman* v. *Lanman,* 206 Mass. 488, the court held that though the guardianship may have ceased as to the person of the ward by his attainment of majority, the trust as to his property would continue as long as such property remains in the guardian's possession and management. The court held in *Hardy* v. *Yarmouth,* 6 Allen, 277, that a transfer of property by executors to themselves as trustees under the same will did not change the status of the property and the liability of the executors to be assessed therefor in the town where they were theretofore assessed. The court said at page 280: ". . . the estate had not been legally transferred by the executors until their account had been duly filed, allowed and approved in the probate court." In *Welch* v. *Boston,* 211 Mass. 178, 185, the court said that where an estate is "given to the same person or persons as trustees, who are also executors, there must not only be some definite, unequivocal and final act of transfer from the executor to the trustee, but such act before it can become 'authoritative and notorious' (*Newcomb* v. *Williams,* 9 Met. 525, 535) must be shown by an account duly filed and allowed by the Probate Court." In *White* v. *Ditson,* 140 Mass. 351, 354–355, the court stated that the requirement that every trustee give a bond "contemplates that, where the same person is executor and trustee, there shall be a distinct transfer of property to him in the latter capacity by authority of the Probate Court . . . .

There should, in that case, be some public act, which could only take place in that court, indicating a discharge of himself in one capacity, and the acceptance of the trust imposed upon him in the other, before this transfer could take place." See *Williams* v. *Acton,* 219 Mass. 520, 524. In *Conkey* v. *Dickinson,* 13 Met. 51, where the same person was executor and guardian of a minor to whom a legacy was given by the will, he continued to hold the amount of the legacy in his capacity as executor and not as guardian until he settled the account of his administration in the Probate Court. At page 54, the court said: "There could be no transmutation of the assets, until the account was allowed by the probate court, so as to charge the guardianship sureties . . . . If his sureties on his bond as executor were liable, it was not competent for him to transfer that liability to his sureties on the guardianship bond. And it seems clear that the former sureties were liable." This court has held that a conservator is entitled to retain possession or custody of the property of his ward until his account has been passed upon by the Probate Court and until the amounts due him for services and expenses have been determined. *Day* v. *Old Colony Trust Co.* 228 Mass. 225; *S. C.* 232 Mass. 207.

The conclusion to be drawn from the cases and supported by reasons grounded in sound public policy is that wherever property is to be transferred from one in one fiduciary capacity to himself in another, for the protection of those in whose behalf the capacities are assumed, the transfer to be effective must be accomplished by some notorious and authoritative act which ordinarily would require the approval of the Probate Court in some form. In the case at bar the funds had been misappropriated before the account of the special administrator was filed in the Probate Court and no effective transfer of the assets from the special administrator to himself as executor had been made. The change of title in the Old Colony Trust Company from special administrator to executor on Mr. Brackett's order was not an act which in and of itself could relieve him from continued responsibility as special administrator.

Upon granting of letters testamentary to Mr. Brackett his powers as special administrator came to an end, G. L. c. 193, § 16, but he continued in that capacity to be the responsible holder of the title to the property and to be liable as special administrator for any misappropriation of the fund until it had been delivered to himself as executor as required by his bond as special administrator. G. L. c. 205, § 1, cl. 3. *Day* v. *Old Colony Trust Co.* 228 Mass. 225, 229; see *S. C.* 232 Mass. 207, 211. The requirement of G. L. c. 193, § 16, that the special administrator shall forthwith deliver the property must be construed to mean, in case the delivery is to himself in another fiduciary capacity, as soon as that can be done so as to make a legal and effective delivery in accordance with the requirements of the law in such a case.

The contention of the accountant is that the payments represented by items 12 and 13 having been made with the approval of the judge of probate cannot be disputed at a hearing on the allowance of the special administrator's account.

G. L. c. 193, § 14, provides that a "special administrator may by leave of the probate court pay from the personal property in his hands the expenses of the last sickness and funeral of the deceased, the expenses incurred by the executor named in the will of the deceased, or by any other person presenting the same for probate, in proving the will in the probate court or in sustaining the proof thereof in the supreme judicial court and also, after notice, such debts due from the deceased as the probate court may approve." A decree of the Probate Court is good until set aside and cannot be attacked collaterally. *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 213, 215. It would seem, however, that the leave of the Probate Court referred to in the statute at least when given without notice to parties interested does not have the full force of a decree of that court within the meaning of the rule stated in the cases referred to. The statute does not in terms require notice as a prerequisite to the approval of the payments referred to therein except when they are payments of "debts due from the

deceased." The approval without notice cannot bind the parties in interest now objecting to the items, who had their first opportunity to object at the hearing on the account. The payments being represented by items in that account are open to attack by the contestants at the hearing on its allowance. Even when accounts have been allowed by decree of the Probate Court errors therein on matters not previously heard and determined may be again brought in question when a later account is presented for allowance. G. L. c. 206, § 19.

So far as the charges of Mr. Healey appearing in item 12 are concerned, the parties agreed that they are fair and reasonable if he, being a witness to the will, could act as attorney in defending it and make a charge for his services to the estate. There is no statute in this Commonwealth prohibiting an attesting witness to a will from acting as attorney for any party interested in sustaining the will, and no principle of the common law which would preclude an attorney from rendering such services has been brought to our attention. The issues which the contestant sought to have tried by a jury were whether the deceased was of sound or unsound mind and whether the execution of the will was procured by fraud or undue influence of a person named Fuller. It does not appear that the formal execution of the will was in dispute or whether Mr. Healey was called upon to testify in the case, and the rule prohibiting an attorney who becomes a witness in a case from making an argument in the same case would not deprive such person of the right to perform other duties as an attorney therein. Mr. Brackett being named as executor of the will had a duty to petition for its allowance in the Probate Court. *Fulton* v. *Umbehend,* 182 Mass. 487. *Clifford* v. *Taylor,* 204 Mass. 358, 361. Reasonable expenses, incurred in connection with the petition for its allowance, are properly chargeable to the testator's estate.

The question presented in connection with item 13 is whether, when the whole conduct of the special administrator, including his misappropriation of the funds of the estate, is considered, he is entitled to be paid for his serv-

ices. The court held in *Jennison* v. *Hapgood*, 10 Pick. 77, 111, that unfaithful administration will not deprive an executor of a right to compensation for his services, so far as they have been beneficial to the persons interested in the testator's estate, and in *Clark* v. *Story*, 208 Mass. 36, 40, by a majority opinion, that a charge might be made for services in the care and management of a vessel by a person who was fraudulently in charge thereof, the court being of the opinion that the avoidance of a foreclosure did away with the effects of the fraud in the case. But in *Little* v. *Phipps*, 208 Mass. 331, the court held that an agent in charge of property of his principal, who takes a secret profit as commission in regard to the matter in which he is employed, loses his right to an agreed compensation even though as a result the principal may get the benefit of valuable services rendered by the agent without compensation. In *McIntire* v. *Mower*, 204 Mass. 233, 235, the court held that compensation for the services of an absconding executor was rightly disallowed upon the facts found in that case. It appeared that he "did not misappropriate the funds of the estate until some time after his appointment and apparently rendered at first some services to the estate, yet his misconduct in failing to deposit or care for the assets so that those interested could know what he did with them, his wilful failure to administer properly the personal estate that came to his possession and the proceeds of the real estate which he sold, his misappropriation of large sums of money to his own use, and his final absconding with substantially all that was left of the assets of the estate, making the present proceedings and a new administration necessary, well warranted the conclusion that his services as a whole were of no value. *Brooks* v. *Jackson*, 125 Mass. 307. There was here the wilful breach of duty which was not found in *White* v. *Ditson*, 140 Mass. 351, 362, or *Rowland* v. *Maddock*, 183 Mass. 360, though both of those cases recognize the rule that the court may refuse to allow any compensation to a trustee who has been guilty of misconduct." In the case at bar when the judge of probate approved a payment to the special administrator for his serv-

ices he did not have before him the facts concerning his maladministration and misappropriation of funds which appear in this record. The facts to which the parties have agreed require the conclusion that when the whole period for which the special administrator is chargeable for the fund is considered no charge for his services in that capacity should be allowed.

It follows that item 12 should be allowed, and all other items in dispute, namely, those numbered 13 to 16 inclusive, should be disallowed. Because of the conclusion reached it is unnecessary to deal in detail with the contestant's requests for rulings. In accordance with the terms of the report the case is remanded to the Probate Court for a determination of the amount of the improper withdrawals and the amount, if any, of any set-offs or counterclaims to the same, and for a restatement of the account not inconsistent with this opinion.

*Ordered accordingly.*