## Athans Spilios & another, executors, *vs.* Zoi Papps & another.

Suffolk.    April 4, 1934. — September 21, 1934.

Present: Rugg, C.J., Pierce, Field, Donahue, & Lummus, JJ.

*Executor and Administrator*, Accounting, Compensation. *Probate Court*, Auditor: rule to auditor, findings by auditor, objections to report, recommittal; Appeal.

*It seems* that a party to proceedings in a probate court respecting an executor's account has no standing to complain of an interpretation by that court of its own order recommitting the case to an auditor, unless he can show that he was misled and thereby deprived of adequate hearing.

Questions respecting the propriety of the admission and exclusion of certain evidence by an auditor, appointed by a probate court for hearings upon an executor's account under a rule requiring that his findings of fact should be final, should be presented to that court by a motion to recommit the case to the auditor, formal objections to the report not being proper practice in that court, which has not adopted the practice provided under Rule 89 of the Superior Court (1932).

Upon appeal from a decree of a probate court denying a motion for a recommittal to such an auditor on the ground that he had erred in excluding certain evidence, no reversible error was shown where the record did not disclose that there was any offer of proof respecting such evidence.

Among the assets of the estate of a testator were shares of capital stock of a certain corporation.  One of two executors of the will owned as an individual the same number of such shares.  For reasons of business policy respecting the ownership of the controlling interest in the corporation, the legatees assented to a decree of the Probate Court authorizing a sale of the estate's shares to a son of such executor for a certain sum.  Thereafter, without such sale actually taking place, the same executor sold his own and the estate's shares to the owner of the remaining shares for a price per share greater than that so authorized and greater than the inventory value, but as executor accounted only for inventory value.  His coexecutor, who had permitted him to handle the administration and settlement of the estate and took no active part therein other than to join in the execution of papers when his signature was required, knew nothing of the sale at the greater price.  A decree of the Probate Court upon the account of the executors charged both of them with the difference between

the inventory value of the estate's shares and the amount received therefor. On appeal, it was *held* that

(1) The active executor was charged properly;

(2) The coexecutor should not have been so held liable;

(3) No reason appeared why the coexecutor should be deprived of compensation as executor.

PETITION, filed in the Probate Court for the county of Suffolk on March 16, 1931, for the allowance of the first account of the executors of the will of John C. Papps, late of Boston.

The petition was referred to an auditor, whose findings of fact were ordered to be final. Facts found by the auditor and proceedings with respect to his reports, together with decrees entered by order of *Poland*, J., are described in the opinion. Appeals were filed by the executors.

*S. D. Elmore,* (*T. E. Shasta* with him,) for the petitioners.

*M. Witte,* for the respondents.

LUMMUS, J. This case comes here upon the appeal of Athans Spilios and George Gabriel, executors of the will of John C. Papps, from a decree of the Probate Court allowing an account which that court substituted for the account filed by the executors, and from other interlocutory decrees. The facts were found by an auditor whose findings of fact, by the terms of the reference, were to be final. G. L. (Ter. Ed.) c. 221, § 57.

The main cause of contention is the charging of the executors with a gain of $4,097.50 over the inventory value of sixty shares of stock of Hub Laundry Co. owned by the testator. The remainder of the stock was owned by James H. Connors, Charles A. Connors, and Athans Spilios, each owning sixty shares. Athans Spilios owned or controlled several companies supplying coats, napkins and other laundered articles, and they provided about forty per cent of the business of Hub Laundry Co. Athans Spilios and Papps had a written agreement, to expire March 14, 1935, by which their stock was to be held and voted as a unit, in order to balance the stock holdings of the Connors brothers, and to prevent the domination of the corporation by the latter.

When Papps died, and Athans Spilios became one of the executors, it was important to Spilios that the Papps stock should be disposed of in such a way as to prevent domination of the corporation by the Connors brothers. The co-executor, Gabriel, was a Greek baker, spoke little English, knew nothing about the laundry business, and left everything to Spilios. With the design of protecting his own interests and not of cheating the estate, Athans Spilios arranged with the Connors brothers that his son, Angelos A. Spilios, should buy the Papps stock for $15,000, to be paid in part by cash and in part by notes, and should be elected a director in the place of Papps. This arrangement was known to the legatees under the will of Papps, and upon the advice of their counsel they consented to a petition for authority to the executors to sell the stock to Angelos A. Spilios on those terms.

Shortly afterwards, about December 11, 1930, before the decree authorizing the sale had been obtained, a dispute arose, and the Connors brothers refused to carry out the arrangement to make Angelos A. Spilios a director. Athans Spilios, fearing a loss of his equality in the corporation, wished to rescind as executor his acceptance of the offer of his son for the stock, but was advised by his counsel that the consent which the legatees had given, and his own guaranty of performance by his son which he had given, would involve him in trouble if he should try to rescind. So he carried out the sale to his son. A decree for sale having been obtained, on December 16, 1930, the old agreement between the testator and Athans Spilios was cancelled, and the executors transferred the Papps stock to Angelos A. Spilios, who paid $3,750 in cash and $11,250 in notes to the executors as agreed. If this had been the entire transaction, no charge of fraud or other misconduct on the part of either executor could have been sustained.

The fact was, however, that ever since the dispute had arisen, about December 11, 1930, Athans Spilios had been trying to convince the Connors brothers that they must either sell their stock or buy out the other stockholders,

and finally succeeded.  The facts about the dispute and the subsequent negotiations with the Connors brothers were not communicated to the legatees or to the Probate Court.  Athans Spilios reached an oral agreement with the Connors brothers before the decree was entered on December 16, 1930.  On December 17, 1930, Athans Spilios entered into a written agreement with the Connors brothers to sell them his own sixty shares and the sixty Papps shares then apparently owned by his son, for a net price of $43,195, and this agreement was carried out.  The auditor finds as follows: "No actual sale was made of the estate's stock in the Hub Laundry Co. to Angelos A. Spilios.  The authority secured by the decree of the court and the acts of the parties immediately following by which they purported to sell the stock to Angelos A. Spilios was a mere form through which they went for the purpose of enabling Athans Spilios to carry out his settlement with Connors brothers."  It appears that the price obtained for the stock was largely due to the control which Athans Spilios had over forty per cent of the patronage of the corporation, which he agreed in writing to continue, without entering into the laundry business himself; but nevertheless the net sum named was obtained for the stock, and no separate price was fixed for entering into the contract to continue the patronage.  The auditor's finding is explicit: "I find that Athans Spilios received $43,195 for the one hundred twenty shares of stock of the Hub Laundry Co. described in the agreement" with the Connors brothers.

The inventory value of the sixty shares belonging to the estate was $17,500, and the Probate Court charged the executors with a gain of $4,097.50, the difference between the inventory value and $21,597.50, which last sum was half the net price at which one hundred twenty shares were sold to the Connors brothers.

Some of the findings already recited were made by the auditor after the original report, made under a rule directing the auditor to "hear the parties interested, examine vouchers and evidence, and report upon the same to the court," had been recommitted to him "to hear such legal

evidence as may be offered to show what the transaction really was between the parties to the sale and to the contract with Connors brothers, and what consideration the accountants and Athans Spilios as an individual respectively received in the transaction." The executors contend that some of the findings so made went beyond the matters recommitted, and even beyond the matters referred originally. Everything open under the account was included in the original reference, and we find nothing in the auditor's reports that goes beyond it. As to the recommittal, since the Probate Court had power to recommit for any and every purpose within the proceeding, it is hard to see how a party can complain of the interpretation by the Probate Court of the scope of its own order, unless he can show that he was misled and thereby deprived of adequate hearing. See *Carleton & Hovey Co.* v. *Burns,* 285 Mass. 479, 483, 484. But if the point is open, we fail to see that on recommittal the auditor heard any matters beyond the scope of the order of recommittal.

The executors further contest the validity of some of the findings already recited, on the ground that in making them the auditor erred by excluding certain evidence offered by the executors as to what part of the sum received from the Connors brothers ought to be deemed the selling price of the Papps stock. Objections to the report, such as were filed by the executors in considerable number and volume, are unknown to practice in the case of auditors except as they have recently been provided for by Rule 89 of the Superior Court (1932), which has not been adopted by the probate courts. Apart from that rule, questions of the admission or exclusion of evidence by an auditor whose findings of fact are final, are presented to the judge by motion to recommit, without formal objections to the report. *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, 253, and cases cited. *McClintic-Marshall Co.* v. *Freedman,* 274 Mass. 558, 561. See also *Epstein* v. *Epstein,* 287 Mass. 248, 254. Ordinarily the action of a judge upon such a motion is reviewed by this court on exceptions under G. L. (Ter. Ed.) c. 231, § 113.

But bills of exceptions are unknown in probate courts, and the only mode of appellate review is by appeal in the nature of an equity appeal. *Mackintosh, petitioner,* 246 Mass. 482. We assume in favor of the executors that the points of evidence, improperly included in the voluminous "objections," were properly incorporated in the motion to recommit which was denied subject to the appeal of the executors, and that they are presented by that appeal. The motion of the executors to amend their motion to recommit, which was denied, was addressed to the discretion of the judge, and we see no reason to reverse his action thereon.

These points of evidence require no extended discussion. With one unimportant exception, in which the executors excepted to a leading question the admission of which was discretionary, all the points of evidence relate to the exclusion of questions asked of witnesses by the executors. In no instance was there any offer of proof at the hearings after recommittal, and consequently the executors fail to show that they were harmed by the exclusion. *Shinners* v. *Proprietors of Locks & Canals,* 154 Mass. 168, 169. *Gray* v. *Tobin,* 259 Mass. 113, 116. *Mackintosh, petitioner,* 268 Mass. 138, 139. Compare *Daley* v. *People's Building, Loan, & Savings Association,* 172 Mass. 533, 534; *Old Silver Beach Corp.* v. *Falmouth,* 266 Mass. 224, 227; *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402. Furthermore, the auditor on recommittal heard and considered substantially everything which tended to show that the selling price of the Papps stock in the sale to the Connors brothers should be deemed a less sum than that found by the auditor.

Another objection of the executors to the findings already recited is, that the power of the Probate Court was limited to the allowance or disallowance of particular items in the account presented by the executors, which covered the period from December 27, 1928, to February 28, 1931, and did not extend to recasting the account or extending it to August 21, 1933. The account presented by the executors did not begin with the inventory value, was improper in

form, and could not be balanced. The Probate Court was not bound to struggle with the accountants in the endeavor to have them recast the account in allowable form, but might let its decision take the form of a draft of a proper account and the allowance of that. It is ordinarily unwise, if not improper, to extend the period of an account, without giving the accountants an opportunity to add new items covering the extended period. It does not appear clearly whether there were or were not new items to be added; the order for a decree speaks of further payments by way of distribution during the extended period, and it is not clear whether the account allowed by the decree covers them or not. The computation of interest may well stop at the end of the period for which the account is filed, and may be continued if need be in a later account. But since, as will appear, the decree must be reversed, and the new decree may take a different form, we need not attempt to decide at this time whether there was error in the manner of bringing the account down to a later time. See *Ensign* v. *Faxon*, 229 Mass. 231.

The findings of the auditor having been arrived at without error, and being conclusive, the next question relates to their legal effect. They show liability on the part of Athans Spilios, who was bound to act wholly in the interest of the estate, and had no right to take an additional profit for himself. *Hayes* v. *Hall*, 188 Mass. 510, 511. *Quinn* v. *Burton*, 195 Mass. 277, 279. *Lindsay* v. *Swift*, 230 Mass. 407, 412. *Ball* v. *Hopkins*, 268 Mass. 260, 266. *Vinal* v. *Gove*, 275 Mass. 235, 241. There is nothing in the suggestion that the matter became *res judicata* by the dismissal of a petition to revoke the decree for sale of the stock to Angelos A. Spilios, without prejudice to the raising of the same issue on the account of the executors.

But the findings show no liability on the part of George Gabriel. True, it is found that he allowed "Spilios to handle the administration and settlement of the estate and took no active part therein other than to join in the execution of papers when his signature was required," and thereby failed in his duty to give the estate the benefit of his intelli-

gent judgment. But no harm resulted (*Hathaway* v. *Huntley*, 284 Mass. 587), for the sale to Angelos A. Spilios was approved by the legatees and was proper for the executors to make. What was improper, was the act of Athans Spilios in making use of that sale as the means of making another sale which resulted in a secret profit to himself. That Gabriel did not know, and could not be expected to know.

The decree was erroneous in holding both executors liable for the profit made by Athans Spilios from the sale of the Papps stock to the Connors brothers, in excess of the price at which it was nominally sold to Angelos A. Spilios. Gabriel was not liable for that profit. Joint accountants may be found accountable in different amounts, and the decree may be varied accordingly. *State Street Trust Co.* v. *Walker*, 259 Mass. 578, 584. *McKim* v. *Aulbach*, 130 Mass. 481. *Hayes* v. *Hall*, 188 Mass. 510, 514. *Andrews* v. *Tuttle-Smith Co.* 191 Mass. 461, 466, 467. *In re Gasquoine*, [1894] 1 Ch. 470. *Terrell* v. *Matthews*, 1 Macn. & G. 433, note. *Hewes* v. *Hewes*, 4 Sim. 1. See also *Weyman* v. *Thompson*, 7 Dick. (N. J.) 263. There is no reason why Gabriel should be deprived of compensation for his services as executor. We need not decide at this time whether Athans Spilios is entitled to any compensation. Since the decree must be reversed, the Probate Court may reconsider that matter in entering a new decree. See *Brackett* v. *Fuller*, 279 Mass. 62, 71, 72; *Gallagher* v. *Phinney*, 284 Mass. 255.

It is difficult to ascertain whether the judge intended to allow $375 paid for the services of Mr. Petrou as attorney for the executors, or not. The explanation given for a computation of interest in schedule A of the account as allowed indicates that he did so intend, but the item does not appear in schedule B. Since the wrong done by Athans Spilios may be fully remedied by a decree against him, we see no reason to disallow this item of attorney's fees. *Jennison* v. *Hapgood*, 10 Pick. 77, 112. *Brackett* v. *Fuller*, 279 Mass. 62, 71, 72. *Loring* v. *Wise*, 226 Mass. 231, 235.

The executors contend that the account stated and

allowed by the Probate Court is erroneous, even upon the theory of liability adopted by that court, with respect to the computation of interest on the selling price of the stock (the allowance of which they have not challenged), with respect to the amounts of partial distributions to the legatees, and with respect to the apparent omission to credit "certain payments on account of distribution made to the legatees since the date of the account" mentioned in the order for a decree. The decree and the record do not explain how these amounts were computed. So far as we can discover, the executors have reason in their contention that they have been computed wrongly. But since the decree must be reversed, we need not attempt to compute them correctly, for the Probate Court may revise the computation in entering a new decree.

The several decrees appealed from are affirmed, except the decree of August 21, 1933, amending the account by substituting an account drawn by the court and allowing that account, which is reversed; and the case is remanded to the Probate Court for the entry of a new decree not inconsistent with this opinion.

*Ordered accordingly.*