BOSTON SAFE DEPOSIT AND TRUST COMPANY & others, executors, *vs.* IRA SIBLEY LEWIS & others.

Middlesex.   November 10, 1943. — October 24, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Executor and Administrator,* Duty of fidelity, Sale of property. *Fiduciary.* *Devise and Legacy,* Extrinsic evidence affecting construction. *Evidence,* Extrinsic affecting writing.

Conduct of executors of a will, one of whom owned one half of the capital stock of a corporation, the other half of which belonged to the estate, purporting to act under a provision of the will authorizing them, "upon request, to sell to" such stockholder all of the shares of stock and interest of the estate in the corporation "at the value which he . . . shall, in his sole judgment, place upon such stock or such interest," but in fact accepting an offer of such stockholder to purchase the estate's stock and interest in the corporation for a named sum, "said sum to be paid upon the completion of the sale of the [corporation's] business . . . [to a designated third person with whom negotiations were pending] and upon liquidation of the" corporation, where the amount purported to be paid by the stockholder resulted in his receiving more than his fair share of net assets of the corporation in the liquidation, was not in fact a genuine sale contemplated by the will but a mere device to enable the stockholder to receive such unfair share, and was a breach of the executors' fiduciary duty to act solely in the interest of the estate and not to the personal advantage of one of themselves at the sacrifice of the estate; and they properly were held accountable for the difference between the amount received by the estate and the amount which was its fair share in liquidation.

Evidence of declarations made by a testator as to what he intended by unambiguous language in his will is inadmissible.

PETITION, filed in the Probate Court for the county of Middlesex, for the allowance of accounts of the executors of the will of Ira L. Lewis, late of Framingham.

The case was heard by *Poland,* J.

In this court the case was argued at the bar in November, 1943, before *Field,* C.J., *Lummus, Qua, Cox,* & *Ronan,* JJ., and after the retirement of *Donahue* & *Cox,* JJ., was submitted on briefs to *Dolan, Wilkins,* & *Spalding,* JJ.

*C. M. Rogerson,* (*J. E. Rogerson* with him), for the petitioners.

*H. Guild,* for the respondent Ira Sibley Lewis.

RONAN, J.   This is an appeal from a decree of the Probate Court of Middlesex County allowing the first and second accounts of the executors of the will of Ira L. Lewis as modified by surcharging two of the three executors with the sum of $4,027.15, for which they should account in connection with the interest that the testator had in the Lewis Furniture Co.

The appellants, Boston Safe Deposit and Trust Company, hereafter called the bank, Robert L. Lewis and Arthur M. Fitts, are the executors of the will of Ira L. Lewis, who died on August 29, 1940.   The testator and Fitts organized, in 1925, the Lewis Furniture Co., hereafter called the company. Each was regarded as owning one half of its capital stock although one of the testator's shares was held in the name of another.   At the time of his death, the company owed the testator $31,000 and Fitts $28,600 for unpaid salaries.   The eleventh paragraph of the will reads as follows: "I authorize my Executors, hereinafter named, upon request, to sell, transfer and convey to my friend Arthur M. Fitts, of Framingham, if he should wish to purchase the same, all of my shares of the capital stock and all of my interest of every name and nature in and to the Lewis Furniture Company, in which he is now interested with me, at the value which he, the said Fitts shall, in his sole judgment, place upon such stock or such interest."

One Kelleher, in the spring of 1941, offered to buy all the assets of the company, except cash, for $150,000, less $35,000, the amount of a mortgage upon the company's real estate. Fitts was unable to secure an increase in this offer.   He was unwilling to vote as a stockholder in favor of the company accepting the offer and upon liquidation to divide the proceeds equally between the estate and Fitts.   Fitts, however, was willing that the company should sell to Kelleher for $150,000 provided the proceeds were divided in the proportion of $80,000 to him and $70,000 to the estate.   The executive committee of the bank voted on April 29, 1941,

to accept the Kelleher offer.. It appearing to the committee that Fitts was unwilling to sell his one half interest in the company on the basis of an equal division of the proceeds between himself and the estate, the committee at the meeting on April 29 voted that, if he would make a reasonable offer under the eleventh paragraph of the will, "the stock ownership and interest of the Estate in the business be sold to him." The bank then prepared a computation of the division of the proceeds from a sale to Kelleher on the 80/70 basis and estimated the amount after all adjustments that would be received by the estate as $46,950 and by Fitts as $54,550. One of the officers of the bank prepared a written offer under date of May 12, 1941, for Fitts, which he signed, and it was later presented to the executive committee of the bank. It was stated in this offer that Fitts in accordance with the eleventh paragraph of the will offered to purchase the stock and interest of the estate in the company for $46,000, "said sum to be paid upon the completion of the sale of the business to Kelleher Bros. of Worcester, Massachusetts, and upon liquidation of the furniture company." The amount to be paid the estate was subject to certain adjustments on an equal basis of the amount of $6,000 reserved for costs of liquidation and taxes. This offer was accepted as fair and reasonable by the executive committee of the bank on May 13, 1941. The judge found that Fitts had no part in making the offer other than signing it, that his only motive was to obtain "the advantage of the 70 and 80 (thousands) division of the purchase price" and that if an equal division had been made the estate would have received $4,027.15 more than it did. There was no evidence that the bank endeavored to protect the estate by obtaining an equal division of the liquidation proceeds, but the judge found that its officers utilized the provisions of paragraph 11 to give Fitts the advantage that he requested by giving to the liquidation of the company the color of a sale to him. Fitts received no assignment of the debt due for the unpaid salary of the testator, and he did not produce any document showing that the two hundred forty-nine shares of the estate had been transferred to him. The judge stated that

his findings as to the true character of the transaction are based in part on his observation of the witnesses. The judge found that there was in reality no purchase by Fitts of the estate's interest in the company within the said paragraph 11 and that the apparent sale to him was merely a device used to enable him to obtain a larger share in the liquidation of the company.

We have a transcript of the evidence and a report of the material facts and it is our duty to decide the case according to our own judgment as to the facts and the law, but the findings of the judge are not to be reversed unless they are plainly wrong. *Boston* v. *Santosuosso,* 307 Mass. 302, 332. *Di Massa* v. *Great American Novelty Co.* 314 Mass. 1, 3.

The general principles governing the conduct of a fiduciary in dealing with trust property have been frequently declared by this court. A trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust. He must lay aside self-interest when it becomes adverse to the rights of the cestuis que trust, for the office of trustee cannot be subverted to fostering the personal advantage or individual gain of the incumbent. There can be no divided loyalty. This principle has always been rigorously enforced. A trustee, unless authorized by the trust instrument or by a decree of a court, or unless he has the consent of all the beneficiaries, if they are of age and competent to decide and are fully informed of all the details of the transaction, which in fact must be fair and reasonable, cannot act in a dual capacity as a seller of trust property to himself or as a purchaser for the trust of his own property. G. L. (Ter. Ed.) c. 202, § 14, as amended by St. 1934, c. 157, § 1. G. L. (Ter. Ed.) c. 203, § 16, as amended by St. 1934, c. 157, § 2. *Dyer* v. *Shurtleff,* 112 Mass. 165. *Bowen* v. *Richardson,* 133 Mass. 293. *Morse* v. *Hill,* 136 Mass. 60. *Hayes* v. *Hall,* 188 Mass. 510. *Spilios* v. *Papps,* 288 Mass. 23. *Malden Trust Co.* v. *Brooks,* 291 Mass. 273. *Terry* v. *Terry,* 305 Mass. 113. Personal gains accruing to a trustee from the transfer of trust property to himself must be accounted for by him even though he was acting in good faith, unless the beneficiaries knew the nature and

effect of the transfer and consented to its being made. *Ball* v. *Hopkins*, 268 Mass. 260. *Dudley* v. *Dudley*, 300 Mass. 270. *Jose* v. *Lyman*, 316 Mass. 271.

However, one may agree to sell his property at a price to be determined by another, and he may be bound to sell at the price so fixed even if the person selected by him to fix the price had an interest in the sale, if the person selecting him knew of his interest and no fraud or lack of good faith is shown. *Krauss* v. *Kuechler*, 300 Mass. 346. *New England Trust Co.* v. *Spaulding*, 310 Mass. 424. *Legro* v. *Kelley*, 311 Mass. 674. A settlor or testator may authorize a trustee to sell the trust property to himself at a price to be determined by the trustee, and a sale to him at the price fixed is valid if the trustee acted fairly and in good faith. *Denholm* v. *McKay*, 148 Mass. 434. *Locke* v. *Old Colony Trust Co.* 289 Mass. 245. A trustee has all the powers expressly granted to him and such powers as are necessarily implied for the due and faithful execution of the trust; and where the method selected by a testator for the accomplishment of the purpose and object of the trust cannot be adopted by a trustee without dealing with himself individually, it may be fairly assumed that such dealing was contemplated by the testator. *Turnbull* v. *Pomeroy*, 140 Mass. 117. *In re Sykes*, [1909] 2 Ch. 241. *Wallace's Estate*, 299 Penn. St. 333. Am. Law Inst. Restatement: Trusts, § 170, comment s. Compare *Bullivant* v. *First National Bank*, 246 Mass. 324; *Vinal* v. *Gove*, 275 Mass. 235; *Faulkner* v. *Lowell Trust Co.* 285 Mass. 375.

The testator authorized Fitts to purchase the interest of the estate in the company at his own valuation. No one denies the right of Fitts to purchase at a price to be determined by him provided he was acting in good faith. The question here presented is whether there was a genuine purchase by Fitts in accordance with the power conferred upon him by the will or whether the purported purchase was merely the garment covering an improper division of the proceeds arising out of the winding up of the company.

There was evidence that Fitts had invested $50,000 in the company; that when he was unable to secure an offer

from Kelleher in excess of $150,000 he told the chairman of the executive committee that if they wanted to sell for $150,000 he ought to have more than one half and he would be willing to consider it on an 80/70 basis; and that the chairman replied that he thought that Fitts was justified in his request and he would present it to the board of directors. It is not clear upon what grounds Fitts could be said to have an interest in the company of any greater value than that of the estate. Each owned one half of the stock, and the claim of the estate for unpaid salary was greater than Fitts's claim of a similar nature. There is nothing whatever to show that, upon an equitable distribution on the winding up of the company, Fitts was entitled to receive more than the estate. Fitts testified that, after he had stated that he would be willing to consider the distribution of the sale on an 80/70 basis, his written offer of May 12, 1941, was prepared by an officer of the bank "working it out on that basis"; that he never asked him a question about the offer which he had drafted; that he had implicit confidence in the officer and the bank; and that he "left it entirely with them." The testimony warranted a finding that all Fitts was concerned in was to secure a certain proportion of the assets in liquidation which was greater than the share that the estate was to receive, and that the bank undertook to accomplish this result. It was in this situation that recourse was had to the power of sale given in the will. That was the vehicle selected to carry through the plan. But not only was the sale of the stock linked to the liquidation of the company but it became a part of the winding up of the company and the distribution of its assets. Nothing was to be paid by Fitts except upon the sale of the business and upon the liquidation of the company. The offer was wholly contingent upon these two events and, as stated by the bank in its acceptance of the offer, the purchase by Fitts was "to be completed upon the sale of the business to Kelleher Bros. of Worcester, Mass. and the liquidation of the furniture company." The sale, if there was one, was to be made simultaneously with the liquidation of the company, at a time when the shares were

of no practical value other than to confer upon the holder the right to receive one half of all the assets of the company which had all been converted into cash.  Whatever payments were made by Fitts apparently came from the proceeds of the sale and one half of the cash that the company had at the time of the sale.  The judge found that no assignment of the claim for unpaid salary was given to Fitts.  No instrument showing the transfer of the stock to Fitts was produced at the hearing, which the judge states was reopened for the purpose of investigating further the realities of the transaction.  Fitts had been advised by an officer of the bank that the production of the stock certificate or the instrument of transfer was not necessary.  The judge was not bound to accept appearances for substance or to regard the so called sale as isolated from the transaction of which it formed a part and parcel.  It could be found that the sale was a mere matter of form; that there was no out and out transfer of the interest of the estate in the company but that, an unequal distribution of the assets of the company having been agreed upon, the power of sale contained in the will was adopted to effect and authorize such a division of the assets.  It is reasonable to assume that the testator knew that there would be a restricted market for the sale of his interests in the furniture company and that it was likely that Fitts might desire to purchase it, and in that event he authorized a sale to Fitts, in whom he seemed to have great confidence, at a valuation to be fixed by Fitts.  What the testator was thinking of was the sale of his interest in a going concern.  If the furniture company was to be liquidated there would be no occasion for the sale of the interest of the estate, for the amount that the estate would receive would depend upon the extent of its proportionate interest in the company and not upon the valuation of that interest by Fitts.  Fitts was given the power to purchase but not the right to determine the value of the distributive share of the estate upon the winding up of the company.  The power of sale could not be used by the executors to induce one of them to consent to the sale of the business and the liquidation of the company in consideration of the

distribution to him of a larger share in the assets than he would have been otherwise entitled to receive. An examination of the evidence and the findings of the trial judge, none of which in so far as they relate to the bank and Fitts is shown to be plainly wrong, leads to no other conclusion. That conclusion is required by the strict enforcement of the settled principles of law governing the administration of trusts. *Denholm* v. *McKay*, 148 Mass. 434. *Spilios* v. *Papps*, 288 Mass. 23. *Jose* v. *Lyman*, 316 Mass. 271.

The judge excluded evidence that the testator had said that he intended by the eleventh paragraph of the will to put the furniture business entirely in the hands of Fitts; that Lewis and Fitts had formed the company for the purpose of establishing a business for their sons; that, upon the withdrawal of Fitts's son, Fitts and Lewis desired to sell the business; and that Lewis a few days before his death requested Fitts to call in a lawyer so that Lewis could give his interest in the company to Fitts. A declaration of a testator as to what he meant by the language he employed in his will is inadmissible and cannot be regarded in the interpretation of the will. *Saucier* v. *Saucier*, 256 Mass. 107, 110, 111. Where, however, the language of a will is ambiguous, the circumstances known to a testator at the time he executed his will may be considered in ascertaining the sense in which he employed the words appearing in the will. *Gray* v. *McCausland*, 314 Mass. 743, 748, 749, and cases cited. The fact that a few days before his death the testator desired to give his interest in the company to Fitts would not convert the power to sell to Fitts into a power to make a gift to him. Such evidence could not be received for the purpose of contradicting, altering or explaining the provisions of the will.

*Decree affirmed.*